*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

ANDY GONZALEZ,

Defendant-Appellant.

UNPUBLISHED
February 25, 2020

No. 344076
Kent Circuit Court
LC No. 17-005065-FC

Before: MARKEY, P.J., and GLEICHER and M. J. KELLY, JJ.

PER CURIAM.

A jury convicted defendant of assault with intent to murder, possession of a firearm during the commission of a felony, possession of a firearm by a felon, and second-degree murder. His convictions stem from the fatal shooting of D'Andre Bullis (a member of a rival gang) and the nonfatal shooting of Manuel Villarreal on May 5, 2017, outside a barber shop. The trial court gave an unnecessary and problematic supplemental instruction on the definition of "reasonable doubt," but the error was ultimately harmless. Defendant also raises a meritless challenge to the jury verdict form used in this case. However, the prosecution agrees with defendant that the trial court improperly sentenced defendant based on the court's "tradition[]" or policy, rather than based on the particular offense and particular offender. We affirm defendant's convictions, but vacate his sentences and remand for resentencing before a different judge.

## I. REASONABLE DOUBT INSTRUCTION

The facts underlying defendant's convictions are not relevant to the issues on appeal and we forego any description in this opinion. Defendant first challenges the trial court's reasonable doubt instruction given during voir dire. Early in the voir dire process, the court gave the prospective jurors the following instruction consistent with M Crim JI 1.9(3) (instructions read before trial):

A reasonable doubt is a fair, honest doubt growing out of the evidence or lack of evidence. It is not merely an imaginary or possible doubt, but a doubt based on reason and common sense. A reasonable doubt is just that, a doubt that is

-1-

reasonable after a careful and considerate examination of the facts and circumstances of this case.

The court proceeded to inform the venire that different levels of proof apply in different types of cases. The court continued regarding the "beyond a reasonable doubt" standard:

It's the highest level of proof. However, I want to make sure that you understand the following: Beyond a reasonable doubt doesn't mean 100 percent convinced, okay? You have to read the definition. I'll give you copies of the definition for you to look at the beginning of the trial once we start.

But in murder cases, some people feel uncomfortable and they think, well, I have to be 100 percent sure that these crimes were committed by the defendant before I can find him guilty, and that's not the standard of proof, okay?

Written instructions were provided to the jurors before deliberation, but a copy was not included in the lower court record. However, the court indicated that it would read the written instructions to the jury as well. The court then repeated its instruction consistent with M Crim JI 3.2(3):

A reasonable doubt is a fair, honest doubt growing out of the evidence or lack of evidence. It is not merely an imaginary or possible doubt, but a doubt based on reason and common sense. A reasonable doubt is just that, a doubt that is reasonable after a careful and considerate examination of the facts and circumstances of this case.

The court did not supplement the definition at that time.

Defendant did not raise a contemporaneous objection to the instruction in the trial court, and his challenge is therefore not preserved. Defendant also contends that his trial counsel was ineffective for failing to object. Defendant filed a motion to remand for a hearing pursuant to *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973), but this Court denied the motion without prejudice "for failure to persuade the Court of the necessity of a remand at this time." *People v Gonzalez*, unpublished order of the Court of Appeals, entered March 18, 2019 (Docket No. 344076). Upon reviewing the record, we continue to believe remand is unnecessary as this issue can be resolved based on the existing record.

"A criminal defendant is entitled to have a properly instructed jury consider the evidence against him." *People v Riddle*, 467 Mich 116, 124; 649 NW2d 30 (2002). The easiest way to achieve this, in most cases, is to read the jury the applicable model jury instructions. However, trial courts are not required to give these model instructions, *People v Petrella*, 424 Mich 221, 277; 380 NW2d 11 (1985), and sometimes give their own tailored instructions even on basic concepts that are accurately described in the instructions. This was such a case.

The court read the standard definition of reasonable doubt to the jury during voir dire. No further elucidation was necessary. "To pass scrutiny, the [reasonable doubt] instruction, when read in its entirety, must leave no doubt in the mind of the reviewing court that the jury understood

the burden which was placed upon the prosecution and what constituted a reasonable doubt." *People v Jackson*, 167 Mich App 388, 391; 421 NW2d 697 (1988). The court's additional ad hoc instruction in this case only muddied the waters. As the Florida Court of Appeals held in *Jones v Florida*, 656 So 2d 489, 490 (Fl Ct App, 1995), a jury instruction stating, "You do not have to be one hundred percent certain of the Defendant's guilt to find the Defendant guilty," "was tantamount to telling the jury that it could base a guilty verdict on a probability of guilt as long as it was [a] a remarkably strong possibility," and was an unconstitutional "minimization of the reasonable doubt standard."

"[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 US 358, 364; 90 S Ct 1068; 25 L Ed 2d 368 (1970). The Constitution requires a trial court to inform the jury that guilt must be proven beyond a reasonable doubt, but does not require a trial court to define the term "reasonable doubt." When the court does so, the instructions "taken as a whole . . . must correctly convey the concept of reasonable doubt to the jury." *Victor v Nebraska*, 511 US 1, 5; 114 S Ct 1239; 127 L Ed 2d 583 (1994) (cleaned up).[1]

Prior to *Victor*, the Court noted, it had only found a due process violation in one case involving the definition of reasonable doubt. In that case—*Cage v Louisiana*, 498 US 39, 40; 111 S Ct 328; 112 L Ed 2d 339 (1990)—the trial court instructed the jury:

> "If you entertain a reasonable doubt as to any fact or element necessary to constitute the defendant's guilt, it is your duty to give him the benefit of that doubt and return a verdict of not guilty. Even where the evidence demonstrates a probability of guilt, if it does not establish such guilt beyond a reasonable doubt, you must acquit the accused. This doubt, however, must be a reasonable one; that is one that is founded upon a real tangible substantial basis and not upon mere caprice and conjecture. It must be such doubt as would give rise to a *grave uncertainty*, raised in your mind by reasons of the unsatisfactory character of the evidence or lack thereof. A reasonable doubt is *not a mere possible doubt*. It is *an actual substantial doubt*. It is a doubt that a reasonable man can seriously entertain. What is required is not an absolute or mathematical certainty, but *a moral certainty*." [Emphasis added.]

The Louisiana Supreme Court found the instruction problematic: "the use of the phrases 'grave uncertainty' and 'moral certainty' in the instruction, 'if taken out of context, might overstate the requisite degree of uncertainty and confuse the jury.' " *Id*., quoting *State v Cage*, 554 So 2d 39, 41 (La, 1989). "But 'taking the charge as a whole,' the [Louisiana Supreme Court] concluded that 'reasonable persons of ordinary intelligence would understand the definition of "reasonable doubt." ' " *Cage*, 498 US at 40-41, quoting *State v Cage*, 554 So 2d at 41.

---

[1] This opinion uses the parenthetical (cleaned up) to improve readability without altering the substance of the quotation. The parenthetical indicates that nonsubstantive clutter such as brackets, alterations, internal quotation marks, and unimportant citations have been omitted from the quotation. See Metzler, *Cleaning Up Quotations*, 18 J App Pract & Process 143 (2017).

The United States Supreme Court disagreed, holding:

> In construing the instruction, we consider how reasonable jurors could have understood the charge as a whole. The charge did at one point instruct that to convict, guilt must be found beyond a reasonable doubt; but it then equated a reasonable doubt with a "grave uncertainty" and an "actual substantial doubt," and stated that what was required was a "moral certainty" that the defendant was guilty. It is plain to us that the words "substantial" and "grave," as they are commonly understood, *suggest a higher degree of doubt than is required for acquittal under the reasonable-doubt standard*. When those statements are then considered with the reference to "moral certainty," rather than evidentiary certainty, it becomes clear that a reasonable juror could have interpreted the instruction to allow a finding of guilt based on a degree of proof below that required by the Due Process Clause. [*Cage*, 498 US at 41 (cleaned up, emphasis added).]

In *Sullivan v Louisiana*, 508 US 275, 277; 113 S Ct 2078; 124 L Ed 2d 182 (1993), the Supreme Court was faced with a reasonable doubt instruction "essentially identical to the one held unconstitutional in" *Cage*. The Court found that that instruction amounted to structural error, requiring automatic reversal, because "an instruction of the sort given here" permitted the jury to find the defendant "probably guilty." *Id.* at 278 (cleaned up).

But not every problematic reasonable doubt instruction rises to the level of structural error. Indeed, as a general rule, "an imperfect instruction is not grounds for setting aside a conviction if the instruction fairly presented the issues to be tried and adequately protected the defendant's rights." *People v Kowalski*, 489 Mich 488, 501-502; 803 NW2d 200 (2011). Moreover, a defendant is not entitled to a new trial unless "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland v Washington*, 466 US 668, 694; 104 S Ct 2052; 80 L Ed 2d 674 (1984).

In *Victor*, 511 US 1, a consolidated case, the Supreme Court considered the propriety of two different reasonable doubt instructions in light of *Cage*. In the first, the Court considered the following instruction given to the jury of Alfred Sandoval:

> A defendant in a criminal action is presumed to be innocent until the contrary is proved, and in case of a reasonable doubt whether his guilt is satisfactorily shown, he is entitled to a verdict of not guilty. This presumption places upon the State the burden of proving him guilty beyond a reasonable doubt.

> Reasonable doubt is defined as follows: It is *not a mere possible doubt*; because everything relating to human affairs, and *depending on moral evidence*, is open to some possible or imaginary doubt. It is that state of the case which, after the entire comparison and consideration of all the evidence, leaves the minds of the jurors in that condition that they cannot say they feel an abiding conviction, *to a moral certainty*, of the truth of the charge. [*Id.* at 7 (emphasis in original).]

In the second case, a trial court advised Clarence Victor's jury "that 'the burden is always on the State to prove beyond a reasonable doubt all of the material elements of the crime charged, and this burden never shifts.' " *Id.* at 18. The trial court continued:

> "Reasonable doubt" is such a doubt as would cause a reasonable and prudent person, in one of the graver and more important transactions of life, to pause and hesitate before taking the represented facts as true and relying and acting thereon. It is such a doubt as will not permit you, after full, fair, and impartial consideration of all the evidence, to have an abiding conviction, *to a moral certainty*, of the guilt of the accused. At the same time, absolute or mathematical certainty is not required. You may be convinced of the truth of a fact beyond a reasonable doubt and yet be fully aware that possibly you may be mistaken. You may find an accused guilty upon the *strong probabilities of the case*, provided such probabilities are strong enough to exclude any doubt of his guilt that is reasonable. A reasonable doubt is an *actual and substantial doubt* reasonably arising from the evidence, from the facts or circumstances shown by the evidence, or from the lack of evidence on the part of the State, as distinguished from a doubt arising from mere possibility, from bare imagination, or from fanciful conjecture. [*Id.* (emphasis in original).]

As to the Sandoval instructions, the Court agreed that the historic term "moral certainty" was no longer in common use and that lay jurors could not be expected to equate this term with the true definition of "beyond a reasonable doubt" without further instruction. *Id.* at 13-14. The Court looked to the jury instructions in their entirety and determined that taken as a whole, the instructions adequately advised the jury of the proper burden of proof and did not "invite[] the jury to convict . . . on proof below that required by the Due Process Clause." *Id.* at 14-15. In relation to Victor, the Court found "somewhat problematic" the equation of "a reasonable doubt with a 'substantial doubt,' " as this "overstated the degree of doubt necessary for acquittal. *Id.* at 19. But, the Court found relief unwarranted because "the instruction provided an alternative" and accurate "definition of reasonable doubt." *Id.* at 20.

The instruction in this case is more akin to the cases in *Victor* than *Cage*. Although the trial court should not have instructed the jury that it did not need to be 100% certain of defendant's guilt in order to convict, the court gave a proper reasonable doubt instruction twice verbally and once in writing. The error was not so overwhelming that the jury could not understand the proper definition of the burden. Given the emphasis on the correct instruction and the brief, fleeting nature of the problematic definition, the court's error was ultimately harmless and defense counsel's failure to object did not likely affect the outcome of this case.

## II. VERDICT FORM

Defendant further asserts that the verdict form employed by the court was deficient. Specifically, the prosecution charged defendant with first-degree murder and the court instructed the jury that it could acquit defendant of first-degree murder and convict him of the lesser charge of second-degree murder. In this regard, the verdict form presented to the jury provided:



We the jury find the defendant Andy Gonzalez.
(mark only one line per count)

**COUNT 1: MURDER 1ST DEGREE**

_____ Not Guilty

Or

_____ Guilty

Or

___X___ Guilty of the lesser included offense of **MURDER 2ND DEGREE**

Reviewing the verdict form with the jury, the court advised:

> Now, Count 1 is first degree murder. And you have three options. You have to choose one of these three options. You can choose not guilty. You can choose guilty, which means guilty of first degree murder, or . . . you can find [defendant] guilty on the lesser included offense of second degree murder. So, again, you have to check one of those three boxes in Count 1, all right?

The jury asked for no clarification of the verdict form or the court's instruction.

According to defendant, this verdict form did not permit the jury to find defendant not guilty of both first-degree and second-degree murder and forced the jury's hand. "The verdict form is treated as, essentially, part of the package of jury instructions." *People v Eisen*, 296 Mich App 326, 330; 820 NW2d 299 (2012). As already noted, jury instructions must be read as a whole to determine if the issues were fairly and sufficiently presented. *Kowalski*, 489 Mich at 501-502. If the instructions and verdict form taken together do not give the jury "the opportunity to return a general verdict of not guilty," a defendant's constitutional rights are violated. *People v Wade*, 283 Mich App 462, 467; 771 NW2d 447 (2009).

Here, a plain reading of the verdict form shows that the jury could return a general verdict of not guilty, a verdict of guilty of first-degree murder, or a verdict of guilty of second-degree murder. One of the boxes on the verdict form allowed the jury to find defendant not guilty of murder of any kind. The court's instructions clarified that point even further. There simply was no error.

Defendant further challenges defense counsel's failure to object to the verdict form below. However, defense counsel cannot be deemed ineffective for failing to raise a futile objection. *People v Putman*, 309 Mich App 240, 245; 870 NW2d 593 (2015).

### III. SENTENCE

The trial court sentenced defendant to nearly 64 to 100 years' imprisonment for his second-degree murder conviction. This sentence, defendant contends, was imposed as a punishment for defendant electing to proceed to trial.

Relevant to the issue on appeal, the trial court made the following statement at a pretrial status conference:

> All right. Now, I've tried five murder cases in this jurisdiction. I'm just letting you know that my habit has been—and I don't think I'd deviate . . . in your case. If you are convicted at trial of second degree murder, I'm very likely to give you the maximum penalty. Do you understand that?
>
> \* \* \*
>
> Because there's a lot of resources that have to go into trying this case. [The assistant prosecutor] has to even get people from out of state, I think, and those are experts and things like that in order to try the case, and it's a lot [of] time and expense. So it's like next Friday is the—the absolute deadline. No more negotiations after that. You take the deal or you leave it. Do you understand?

Defendant later appeared for a plea hearing, but chose not to accept a plea deal. The court reminded defendant:

> Okay, I don't think I need to reiterate everything. This is your drop-dead date essentially to determine whether you wanted to take the deal that's being offered or reject it. Do you understand that?
>
> \* \* \*
>
> And I outlined, I think, if you're convicted of murder in the second degree, the top of the guidelines, which you're likely to get from the Court, are 67 years as a minimum sentence. Do you understand that?

Finally, the court stated at defendant's May 14, 2018 sentencing hearing:

> Well, we had some pretty explicit conversations with [defendant] before this matter went to trial, and I told him that if he was convicted of first degree murder, I'd give him life without the possibility of parole, as I'd be required to do.
>
> I told him that if he got convicted of second degree murder, that I would likely go to the high end of the guidelines because that's what I have done traditionally in other second degree murder cases, and I do not see any reason to deviate from that today.
>
> I would note for the family and for the general public – I've said this before in other cases like this. This is a second degree murder conviction. The penalty of life without the possibility of parole does not exist with a second degree murder conviction. I could give Mr. Gonzalez life imprisonment, but under the law, if I gave him life imprisonment with a second degree murder charge, he could be eligible for parole in 15 years, which is not something I want to do here, so I'm going to give him a term of years in this case. So, I'll try to explain the sentence as best I can.

"[A] policy of sentencing all defendants who go to trial to the top of the sentencing guidelines range is fundamentally inconsistent with the principle of individualized sentences." *People v Pennington*, 323 Mich App 452, 466; 917 NW2d 720 (2018).[2] Such a policy "runs afoul of the principle that a court cannot base its sentence even in part on a defendant's refusal to admit guilt." *Id*. at 467 (cleaned up). It also violates the defendant's right to due process of law. *Id*.

The trial court's statements could not be clearer; the court sentenced defendant at the top of the minimum sentencing guidelines range for his second-degree murder conviction not because it was appropriate individualized sentence, but because defendant chose to proceed to trial. This violated the principle that a sentence cannot be based, even in part, on the defendant's refusal to admit guilt. And this violated defendant's constitutional rights. The prosecution agrees that resentencing is required on this basis. We must vacate defendant's sentences and remand for resentencing.

Given the trial judge's statements on the record, we must remand for resentencing before a different judge. In *Pennington*, 323 Mich App at 469, this Court similarly remanded for resentencing before a different judge, but did not explain the basis for its decision. However, we agree with *Pennington*'s result in this regard. In evaluating whether resentencing should take place before a different judge, we consider:

> (1) whether the original judge would reasonably be expected upon remand to have substantial difficulty in putting out of his or her mind previously-expressed views or findings determined to be erroneous or based on evidence that must be rejected, (2) whether reassignment is advisable to preserve the appearance of justice, and (3) whether reassignment would entail waste and duplication out of proportion to any gain in preserving the appearance of fairness. [*People v Hill*, 221 Mich App 391, 398; 561 NW2d 862 (1997) (cleaned up).]

The trial judge improperly expressed on the record that his sentencing decision was motivated by defendant's failure to accept a plea, requiring a trial and the exhaustion of "a lot of resources," "a lot [of] time and expense." The judge specifically imposed the maximum term of nearly 64 years, rather than "life," to prevent the possibility that defendant could be entitled to parole in 15 years. To avoid any appearance of injustice, resentencing before a different judge is required.

We affirm defendant's convictions, but vacate his sentences and remand for resentencing before a different judge. We do not retain jurisdiction.

/s/ Jane E. Markey
/s/ Elizabeth L. Gleicher
/s/ Michael J. Kelly

---

[2] *Pennington* was issued on March 22, 2018, nearly two months before the trial court sentenced defendant.

-8-