*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

DORIAN WARNER COLLIER,

Defendant-Appellant.

UNPUBLISHED
March 19, 2020

No. 344717
Kent Circuit Court
LC No. 18-000119-FC

Before: O'BRIEN, P.J., and JANSEN and GLEICHER, JJ.

PER CURIAM.

Defendant appeals as of right his conviction of one count of armed robbery, MCL 750.529. The trial court sentenced defendant, as a third-offense habitual offender, MCL 769.11, to 16 to 70 years' incarceration consecutive to his parole. We affirm.

## I. FACTUAL BACKGROUND

This case arose from an alleged scheme by defendant and his mother to lure the victim to the mother's home and rob him. According to the prosecution, defendant's mother lured the victim to her home for a sexual encounter. After the sexual encounter was complete, the victim left the home and was intercepted by defendant. Defendant was carrying a pistol and demanded money from the victim before fleeing the scene. Police officers tracked defendant through the snow and arrested defendant after following the tracks to his mother's yard and back into the street. In response, defendant claimed that he merely ran into the victim as the victim was leaving his mother's home, became angry with him, and attempted to strike the victim before fleeing the scene. He also alleged that the victim was involved in criminal activities that defendant was attempting to stay away from. Defendant's case went to trial, and the jury convicted defendant of one count of armed robbery.

## II. PROSECUTORIAL MISCONDUCT

Defendant first argues that the prosecutor committed misconduct by arguing facts not in evidence. To preserve a claim of prosecutorial misconduct, defendant must object at the trial court. *People v Cox*, 268 Mich App 440, 451; 709 NW2d 152 (2005). Defendant did not object in the

trial court to the prosecutor's argument, so his claims are unpreserved. We review unpreserved claims of prosecutorial misconduct for plain error affecting defendant's substantial rights. *Id*. We will reverse under plain error when "(1) the error . . . occurred, (2) the error was plain, i.e., clear and obvious, and (3) the plain error affected substantial rights." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).

The crux of defendant's argument on appeal is that during the prosecution's closing statement, the prosecutor referred to the testimony of Travis Shaw:

> And then we have the bunk mate, Travis Shaw, and you all got to watch how he, you know, testified, or didn't really want to testify. But the interesting thing about this is, you know, he—he reaches out to talk to these detectives about a homicide, detectives that know nothing about this case at all. He has his own case in Kentwood on his own armed robberies. He didn't know Dorian. But when he gets talking to officer—Detective Lewis, he's like, oh, and also, you know, I know about this. And, again, there's no other explanation for these details that Travis Shaw knows except for that he was bunked with the defendant for weeks or months, and the defendant and he were talking about their stuff, they're talking about what happened. And you could say, well, he's just saying, you know, what he was charged with, but the important thing is there was details that Travis Shaw heard that we didn't get from anywhere else, but the only one that maybe would know that would be the defendant. And that's why, you know—and he was—he was hesitant to talk, obviously, for obvious reasons, but when he was pushed on it, he kept saying, well, I mean I heard that stuff, and—but—well, where? Well, because we were talkin'. Okay, well, basically, you know, you don't want to be a snitch, but, you know, he told you.

> And some of that stuff is important, too, it's the whole setup between him and his mom. You know, she had this victim come over. She told me when he was outside. It was about $300. He was mad because his mom—his mom said that this guy had a lot more money, and he didn't end up having as much. And, you know, he said he went back to the house and gave his mom some of the money. And he actually told him I didn't get caught with the gun or the right amount of money.

"A prosecutor may not make a statement of fact to the jury that is not supported by evidence presented at trial and may not argue the effect of testimony that was not entered into evidence." *People v Unger*, 278 Mich App 210, 243; 749 NW2d 272 (2008). However, we will not reverse an improper comment if "any prejudicial effect could have been dispelled by a timely objection and curative instruction." *Id*.

Here, the prosecution argued that defendant's bunkmate, Shaw, testified about how he had disclosed details of defendant's crime to the police. Shaw allegedly learned these details from conversations with defendant. However, Shaw's testimony was inconsistent, and at times confusing. Initially, Shaw claimed that he did not remember his statements to detectives during their investigation. When confronted with a report written by detectives and asked whether he made the statements contained within the report, Shaw testified that he knew the details contained within the report, but he still did not recall telling them to the detectives. Shaw claimed that he

only knew those details because defendant was discussing the allegations against him. These details included that defendant told him that his mother set up the victim for the robbery, that defendant told him that the amount he stole was $300, and that defendant believed he would not be caught because he was not found with a gun or the correct amount of money. Although Shaw denied remembering making these statements, he acknowledged that he knew these details because of statements from his conversations with defendant. Defendant argues that because the prosecution referred to the statements made by Shaw during closing statements, the prosecutor argued facts not in evidence.

Indeed, Shaw repeatedly changed his responses to questions about his previous conversations with both detectives and defendant. However, when asked whether he made up the details he provided to detectives, Shaw denied this and explained: "it came basically from me knowing about the case. I don't remember exactly the things that was said. But with everything you read off is just me knowing about it." The prosecutor then asked Shaw how he was aware of these details that he gave to detectives. Shaw testified that defendant told him about these details, but claimed that these discussions were limited to the accusations against defendant. When confronted with his statement that defendant gave his mother $150 after he returned to her house, Shaw denied hearing this from defendant, but remembered telling detectives this detail.

This record shows that Shaw implicitly and explicitly admitted that he was personally aware of the details the prosecutor argued in her closing argument. Shaw also admitted that he was aware of these details because of his conversations with defendant while they were bunkmates. To be clear, Shaw claimed that these statements were made by defendant, but were made in the context of defendant describing the charges against him (as opposed to being true admissions of what occurred). However, whether Shaw was truthful regarding this aspect is an issue of credibility for the jury to decide. See *People v Wolfe*, 440 Mich 508, 517-518; 489 NW2d 748 (1992), amended 441 Mich 1201 (1992). Although only implicitly admitted by Shaw, these facts were appropriately introduced through Shaw's testimony about his conversations with both detectives and defendant. Therefore, the prosecutor did not engage in prosecutorial misconduct by arguing about the details explicitly or implicitly admitted by Shaw, and by encouraging the jury to consider these details as admissions by defendant.

However, assuming arguendo that the prosecutor committed misconduct, defendant has not shown that these statements prejudiced him. First, it is noteworthy that the prosecutor's use of Shaw's testimony was a relatively small part of a much broader argument utilizing physical evidence presented at trial. To the extent that the prosecutor relied on facts not in evidence, this argument would only be of minimal impact because, as Shaw repeatedly insisted, defendant only made these statements to Shaw in the context of a generalized discussion of their cases. Therefore, as far as the jury was concerned, it was merely hearing the details of the charges against defendant as perceived by defendant.

Second, the trial court instructed the jury that the prosecutor's arguments were not to be considered evidence and that the jury should only decide the facts of the case on the basis of witness testimony and other evidence presented. Any minimal prejudice experienced by defendant because of the prosecutor's argument is generally cured by the trial court's appropriate instruction. See *People v Bahoda*, 448 Mich 261, 281; 531 NW2d 659 (1995). Moreover, if defense counsel objected to the prosecution's argument, any error could have been immediately cured. This Court

generally refuses to reverse such errors. See *People v Stanaway*, 446 Mich 643, 687; 521 NW2d 557 (1994) ("An exception exists if a curative instruction could not have eliminated the prejudicial effect or where failure to consider the issue would result in a miscarriage of justice."). Because the trial court explicitly instructed the jury to not consider the statements of the prosecutor as evidence and because defendant could have objected to this testimony but instead chose to utilize it later, defendant fails to show prejudice.

Defendant argues that defense counsel was ineffective for not objecting to the prosecutor's improper statements.

"The denial of effective assistance of counsel is a mixed question of fact and constitutional law, which are reviewed, respectively, for clear error and de novo." *People v Brown*, 279 Mich App 116, 140; 755 NW2d 664 (2008). Absent an evidentiary hearing, we review defendant's claims of ineffective assistance of counsel for mistakes apparent on the record. *People v Mack*, 265 Mich App 122, 125; 695 NW2d 342 (2005).

"To establish an ineffective assistance of counsel claim, a defendant must show that (1) counsel's performance was below an objective standard of reasonableness under prevailing professional norms and (2) there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different." *People v Lockett*, 295 Mich App 165, 187; 814 NW2d 295 (2012). "[T]his Court presumes that a defendant received effective assistance of counsel, and the defendant bears a heavy burden to prove otherwise." *People v Garza*, 246 Mich App 251, 255; 631 NW2d 764 (2001). "Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel." *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010).

Regarding defendant's ineffective assistance of counsel claim, we hold that defendant's failure to object did not fall "below an objective standard of reasonableness under prevailing professional norms . . . ." *Lockett*, 295 Mich App at 187. As discussed earlier, the prosecutor's argument was partially in error. However, defense counsel actually used the prosecutor's references and Shaw's testimony in his own closing argument in order to highlight the weakness of the prosecution's case. The implication of defense counsel's argument was that Shaw lied to police officers and may have misled these officers by making up falsehoods about defendant. As defense counsel viewed the case, this tainted the police officer's investigation of defendant. Moreover, defense counsel pointed out that Shaw explicitly denied the details the prosecution highlighted. Generally, we refrain "from second-guessing trial strategy." *People v Reed*, 449 Mich 375, 384; 535 NW2d 496 (1995). Considering Shaw's inconsistent testimony, it was not unreasonable for defense counsel to allow the prosecutor set up her reliance on this testimony so that defense counsel could then attack the credibility of the prosecution's entire case or address the matter in his own closing argument. Similarly, there is not "a reasonable probability that, but for counsel's error, the result of the proceedings would have been different." *Lockett*, 295 Mich App at 187. Again, defendant was found after police officers tracked him from the scene of the crime by his footprints in the snow. These footprints included a distinct Nike Swoosh, which was identical to the shoes that defendant was wearing. When defendant was approached by officers, he immediately gave an unprompted denial that he robbed anyone. Although defendant was not found with the correct sum of money on his person, he was found with a lesser amount in denominations that the victim confirmed matched the denominations he surrendered. In short,

there is significant evidence of defendant's guilt. In light of this significant evidence of defendant's guilt at trial, we conclude that even if defense counsel was ineffective for failing to object, this failure did not impact defendant's trial.

## III. PRIOR BAD ACTS

Next, defendant argues that the trial court erred by allowing the introduction of defendant's prior bad acts, contrary to MRE 404(b). Defendant's argument is twofold. First, defendant argues that there was insufficient notice of the details of the crime and that the trial court failed to properly analyze the risk of unfair prejudice. Second, defendant argues that because there was not an appropriate analysis under MRE 404(b), the trial court erred in its admission.

We review a trial court's decision to admit evidence for an abuse of discretion. *People v Bynum*, 496 Mich 610, 623; 852 NW2d 570 (2014). "A trial court abuses its discretion when it makes an error of law in the interpretation of a rule of evidence." *People v Jackson*, 498 Mich 246, 257; 869 NW2d 253 (2015). Preliminary questions of law are subject to de novo review. *People v Mardlin*, 487 Mich 609, 614; 790 NW2d 607 (2010). A trial court abuses its discretion when its decision is "outside the range of reasonable and principled outcomes." *People v Mahone*, 294 Mich App 208, 212; 816 NW2d 436 (2011). "A trial court necessarily abuses its discretion when it makes an error of law."

Generally, all relevant evidence is admissible. MRE 402; *People v Sharpe*, 502 Mich 313, 331; 918 NW2d 504 (2018). "Relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401 (quotation marks omitted). Our Supreme Court previously explained the elements of relevancy as follows: "Relevant evidence thus is evidence that is material (related to any fact that is of consequence to the action) and has probative force (any tendency to make the existence of a fact of consequence more or less probable than it would be without the evidence)." *People v Sabin*, 463 Mich 43, 57; 614 NW2d 888 (2000). "Materiality, however, does not mean that the evidence must be directed at an element of a crime or an applicable defense." *Id*. (quotation marks and citation omitted). "A material fact is one that is in issue in the sense that it is within the range of litigated matters in controversy." *Id*. (quotation marks and citation omitted).

However, MRE 404(b)(1) prohibits the introduction of prior bad acts, even when relevant, for the purposes of showing propensity. MRE 404(b)(1) provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case.

"The first sentence of this rule represents the deeply rooted and unwavering principle that other-acts evidence is inadmissible for propensity purposes." *People v Denson*, 500 Mich 385,

397; 902 NW2d 306 (2017). "This rule reflects the fear that a jury will convict a defendant on the basis of his or her allegedly bad character rather than because he or she is guilty beyond a reasonable doubt of the crimes charged." *Id*. However, "[t]he second sentence of MRE 404(b)(1) establishes that other-acts evidence may be admissible for other nonpropensity purposes." *Id*. at 398. Our Supreme Court described the required steps of analysis for the introduction of MRE 404(b) evidence as follows:

> First, that the evidence be offered for a proper purpose under Rule 404(b); second, that it be relevant under Rule 402 as enforced through Rule 104(b); third, that the probative value of the evidence is not substantially outweighed by unfair prejudice; fourth, that the trial court may, upon request, provide a limiting instruction to the jury. [*People v VanderVliet*, 444 Mich 52, 55; 508 NW2d 114 (1993).]

Defendant does not actually argue that the evidence of defendant's previous armed robbery was irrelevant or unfairly prejudicial. Rather, defendant claims that the trial court never made the necessary review of this under MRE 403. However, defendant is incorrect that this issue was never addressed in the trial court and that there was insufficient notice of the details for the MRE 404(b) notice. The prosecution explicitly stated that it provided defense counsel with a police report with details of the previous robbery. Defendant acknowledges on appeal that this notice was provided in a timely manner, but he appears to suggest that the notice was deficient because the prosecution did not provide a police report and because the notice was not entered into the register of actions.

Neither argument is entirely factually accurate. First, it is correct that there is no notice contained within the lower court file. On the first day of trial, the prosecution explained that notice and a police report were provided to defense counsel. Defendant did not object on an insufficient notice ground in the trial court. Moreover, defendant argued that the evidence was irrelevant and cited to the details of the previous robbery to support defendant's argument. This failure to object and defendant's utilization of facts to argue against the evidence's introduction indicates that defense counsel was provided with an appropriate notice.

In addition, contrary to defendant's argument, the trial court addressed the relevancy of the previous robbery and its prejudicial value. The trial court heard argument on this matter and stated:

> I believe that the prosecutor has articulated that this is a similar armed robbery, similar scheme, similar plan. I believe that it is admissible under MRE 404(b). The Court does have to apply the balancing test of Rule 403, and that specifically states that "The Court has to address whether the probative value is substantially outweighed by unfair prejudice, confusion of issues, or misleading the jury." I do not believe that its probative value is substantially outweighed. I will admit this during the course of the trial, and I will give the standard jury instruction for 404(b) when it's appropriate.

Because the basis of defendant's argument is factually untrue, we decline to reverse under this analysis alone. However, we must also consider the substance of whether this evidence was properly admitted and whether the trial court erred in its admission.

First, the prosecution offered the evidence for permissible purpose: that these two incidents indicate that defendant had a "scheme, plan, or system" in conducting armed robberies. See MRE 404(b)(1). The previous incident was similar to the instant case in at least four ways: (1) defendant's use a gun; (2) his use of a gun to threaten a victim into giving him money; (3) his fleeing from the scene with the aid of compatriots; and (4) changing into different clothes to avoid detection. These are "common features" sufficient "to infer a plan, scheme, or system to do the acts." *Sabin*, 463 Mich at 66.

Second, the trial court also did not err by finding that the MRE 404(b) evidence was relevant. Our Supreme Court previously explained the elements of relevancy as follows:

> MRE 401 defines relevant evidence as evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Relevant evidence thus is evidence that is material related to any fact that is of consequence to the action) and has probative force (any tendency to make the existence of a fact of consequence more or less probable than it would be without the evidence). *Sabin*, 463 Mich at 56-57 (quotation marks and citation omitted).

"Materiality, however, does not mean that the evidence must be directed at an element of a crime or an applicable defense." *Id*. at 57 (quotation marks and citation omitted). "A material fact is one that is in issue in the sense that it is within the range of litigated matters in controversy." *Id*. (quotation marks and citation omitted).

In addition, relevant evidence may still be excluded if the evidence's probative value is substantially outweighed by the risk of unfair prejudice. MRE 403 provides that:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

The MRE 404(b) evidence in this case was relevant, probative, and not outweighed by the risk of unfair prejudice. The evidence of defendant's plan or system in committing armed robbery was probative toward the purpose of identifying defendant as the assailant in the current case and showing that defendant possessed a particular strategy and plan for his robberies. This was particularly important because the victim only identified part of the assailant's face and defendant was disputing that he robbed the victim during their altercation. Therefore, the evidence was highly probative toward a material fact and was offered for a nonpropensity purpose of showing defendant's common plan.

The evidence was prejudicial to defendant. However, when balanced against the highly probative value of showing defendant's longstanding armed robbery strategy for the purposes of showing defendant's identity and intent, that prejudice was hardly unfair. See *People v Sharpe*, 502 Mich 313, 333; 918 NW2d 504 (2018) ("All relevant and material evidence is prejudicial; we are concerned only with unfairly prejudicial evidence that may be given inappropriate weight by the jury or involve extraneous considerations."). Moreover, the trial court issued an appropriate

instruction limiting the jury's consideration of this evidence to its proper purpose. Therefore, the trial court did not err by permitting the introduction of defendant's prior bad acts.

Finally, even if this evidence was improperly introduced, we would conclude that any error was harmless. We presume nonconstitutional preserved errors to be harmless, and the defendant bears the burden of showing that the error resulted in a miscarriage of justice. *People v Hawthorne*, 474 Mich 174, 181; 713 NW2d 724 (2006). Error justifies reversal if it is more probable than not that it affected the outcome. *People v Lukity*, 460 Mich 484, 495-496; 596 NW2d 607 (1999). "A preserved error in the admission of evidence does not warrant reversal unless after an examination of the entire cause, it shall affirmatively appear that it is more probable than not that the error was outcome determinative." *People v Burns*, 494 Mich 104, 110; 832 NW2d 738 (2013) (quotation marks and citation omitted).

The testimony at trial indicates than any error was harmless. Shortly after the armed robbery, a number of police officers arrived with a K-9 unit. Because there was heavy snow on the ground, the officers quickly located tracks with a distinct Nike Swoosh in the snow. These tracks led directly to defendant and were not interrupted. Upon being approached by police officers, defendant expressed confusion about why he was being arrested and asked officers without being prompted, "Did I rob somebody in this red sweatshirt?" As the prosecution pointed out, it was highly suspicious that defendant assumed he was being arrested for robbing someone. Moreover, defendant was found wearing a pair of red and gray Nike tennis shoes with the Nike emblem on them. This combination of evidence indicates that, even without the evidence of defendant's prior armed robbery, it is not "more probable than not that the error was outcome determinative." *Burns*, 494 Mich at 110 (quotation marks and citation omitted). Therefore, defendant is not entitled to relief.

Defendant also challenges the admission of defendant's prior bad acts under the theory that his attorney's failure to object constitutes ineffective assistance of counsel. We disagree.

As we have previously concluded, evidence of defendant's prior bad acts was properly admitted. Thus, defense counsel's failure to object to the purported error did not fall below "an objective standard of reasonableness under prevailing professional norms . . . ." *People v Anderson*, 322 Mich App 622, 628; 912 NW2d 607 (2018). "Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel." *Ericksen*, 288 Mich App at 201. Similarly, because defense counsel's objection to the introduction of the MRE 404(b) evidence would have been properly overruled, there is not a reasonable probability that the result of defendant's trial was affected by any alleged deficiency in defense counsel's performance. See *Anderson*, 322 Mich App at 628. Moreover, because our presumption is that the jurors considered this evidence for its proffered purpose and not to show defendant's propensity toward crime, defendant cannot show that he was prejudiced. See *Unger*, 278 Mich App at 235.

## VI. CHALLENGE TO SENTENCE

Next, defendant challenges his sentence. Defendant argues that the trial court erred by sentencing defendant on the basis of defendant's refusal to plead guilty and decision to proceed to trial.

"[A] policy of sentencing all defendants who go to trial to the top of the sentencing guidelines range is fundamentally inconsistent with the principle of individualized sentences." *People v Pennington*, 323 Mich App 452, 467; 917 NW2d 720 (2018). "The judge's policy also runs afoul of the principle that [a] court cannot base its sentence even in part on a defendant's refusal to admit guilt." *Id.* (quotation marks and citation omitted) (alteration in original). "The right to trial by jury in a criminal felony prosecution is among the most fundamental rights provided by our judicial system." *Id.* "Moreover, [i]t is a violation of due process to punish a person for asserting a protected statutory or constitutional right." *Id.* (alteration in original).

However, our review of the record at sentencing shows that it was the victim, rather than the trial court, who advocated for a higher sentence. The trial court specifically disavowed having promised to sentence defendant to a higher range because he refused to plead guilty. Therefore, this claim is without merit.

## V. INEFFECTIVE ASSISTANCE FOR FAILURE TO CALL OFFICER REED

Finally, defendant argues that defense counsel was ineffective for failing to call Officer Michael Reed as a witness for the purpose of impeaching the victim. We note that although defendant alleges that Officer Reed's testimony would have been beneficial for the purposes of impeaching the victim, defendant does not explain what Officer Reed's testimony would have been or how it would have impeached the victim. Therefore, we could find that defendant has not successfully supported this claim and refuse to address it. See *People v Hoag*, 460 Mich 1, 7; 594 NW2d 57 (1999).

Affirmed.

/s/ Colleen A. O'Brien
/s/ Kathleen Jansen
/s/ Elizabeth L. Gleicher