# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

FLOYD RAY PENNINGTON,

Defendant-Appellant.

FOR PUBLICATION
March 22, 2018
9:05 a.m.

No. 323231
Wayne Circuit Court
LC No. 14-002915-01-FC

Before: JANSEN, P.J., and SERVITTO and SHAPIRO, JJ.

PER CURIAM.

Defendant appeals his convictions following a bench trial of second-degree murder, MCL 750.317,[1] felon in possession of a firearm, MCL 750.224f, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. Defendant was sentenced as a second-offense habitual offender, MCL 769.11, to concurrent prison terms of 46 years and eight months to 56 years for the second-degree murder conviction and one to five years for the felon-in-possession conviction, to be served consecutive to a five-year term of imprisonment for the felony-firearm conviction. For the reasons set forth in this opinion, we affirm defendant's convictions, but remand for resentencing before a different judge.

## I. FACTS

Defendant's convictions arose from the December 24, 2013 shooting death of the victim, James Buckman, Jr., in the driveway of Great Lakes Power & Equipment (Great Lakes). It is undisputed that defendant shot the victim during a verbal altercation, causing his death. A witness, Mark Mosed, testified that at the time that the victim was shot, he saw defendant pointing a gun out of the window of his truck. Mosed removed the gun from defendant's hand, but then gave the gun back to defendant, and told him to leave. Another witness, Robert Okun, observed the escalating verbal altercation between defendant and the victim. Okun thought that he heard defendant threaten the victim by saying, "I will kill you, if you touch my dog." Okun denied hearing the victim threaten defendant, but testified that he heard the victim call defendant

---

[1] Defendant was originally charged with open murder, MCL 750.316.

-1-

a "white trash hillbilly." Although Okun did not see defendant's reaction to the slur, he testified that he heard two gunshots thereafter.

After defendant's arrest, he gave a statement to the police claiming that he shot the victim because the victim was coming at him with a gun. A surveillance camera located on Great Lakes's property captured much of the encounter, and defendant's statement was inconsistent with the events depicted in the video. It revealed that at the time the victim was shot, he was standing with his arms at his side, and had nothing in his hands. At trial, defendant asserted that the evidence established that he acted in self-defense. Alternatively, defendant argued that, at most, he was guilty of voluntary manslaughter. The trial court rejected defendant's self-defense theory, and found him guilty of second-degree murder and the firearm charges.

## II. ANALYSIS

### A. PRELIMINARY EXAMINATION TRANSCRIPT

On appeal, defendant first argues that during trial, the court improperly reviewed testimony from his preliminary examination transcript. We disagree.[2]

During trial, the prosecutor attempted to impeach Mosed with inconsistent testimony he gave at defendant's preliminary examination with regard to the distance between defendant and the victim before the shooting. The following exchange occurred on the record:

> *The Court*: Hold on. One moment.
>
> *Mr. Anderson*: Yes, Judge.
>
> *The Court*: They have this thing now where they don't put preliminary exam transcripts in the file. So I don't have preliminary exam transcripts readily available. I'll get it hold on. I just have to log into the computer. So just give me one moment.
>
> * * *
>
> *The Court*: You may continue.
>
> (By Mr. Anderson):

---

[2] Because defendant did not object at trial to the trial court's review of the preliminary examination transcript, this issue is unpreserved. *People v Metamora Water Serv, Inc,* 276 Mich App 376, 382; 741 NW2d 61 (2007). An unpreserved claim of error is reviewed for plain error affecting defendant's substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). To satisfy the plain error standard, a defendant must show (1) an error, (2) that the error was plain, (i.e., it was clear or obvious), and (3) that the error affected his substantial rights (i.e., that the outcome was affected). *Id.*

[*Mr. Anderson*]. Do you recall testifying at the preliminary examination that was held on April 9th, 2014?

[*Mosed*]. Yes, sir.

[*Mr. Anderson*]. In front of the Honorable Judge Joseph Baltimore in this building?

[*Mosed*]. Yes, sir.

[*Mr. Anderson*]. Okay, and do you recall being asked the question –

*The Court*: Line, page, please.

*Mr. Slameka*: Page and line, please, Judge.

*Mr. Anderson*: I'm sorry. I'm on Page 23.

*Mr. Slameka*: Thank you.

*Mr. Anderson*: That would be Lines 14 through 16. Excuse me.

*The Court*: I'm sorry? Hold on.

(By Mr. Anderson):

[*Mr. Anderson*]. I'm sorry. To set this question up, we probably have to go back to line 3. Do you recall being asked this question . . . .

Relying on *People v Ramsey*, 385 Mich 221; 187 NW2d 887 (1971), defendant erroneously argues that the trial court's brief use of the preliminary examination transcript constitutes error requiring reversal of his conviction.

In *Ramsey*, the trial court, sitting as the trier of fact, reviewed the transcript of the preliminary examination testimony of the complainant. *Ramsey*, 385 Mich at 223. The Supreme Court held that this was reversible error because it violated the Confrontation Clause for the trial court to consider testimony not admitted at trial. *Id*. at 225. The Court noted that MCL 768.26 bars the admission of preliminary examination testimony unless the witness cannot be produced at trial or has become mentally incapacitated since the preliminary examination.[3] *Id*. at 223-224.

---

[3] MCL 768.26 provides:

Testimony taken at an examination, preliminary hearing, or at a former trial of the case, or taken by deposition at the instance of the defendant, may be used by the prosecution whenever the witness giving such testimony cannot, for any reason, be produced at the trial, or whenever the witness has, since giving such testimony become insane or otherwise mentally incapacitated to testify.

In this case, however, the trial court was merely using the preliminary examination transcript to follow along as counsel used that testimony to impeach the witness. Prior statements, including one made at a preliminary examination, are admissible for purposes of impeachment. MRE 613. Because the trial court only reviewed the portion of the transcript properly read into the record, it did not consider any testimony that was not admitted at trial. Moreover, the record indicates that the judge understood that the portion of the preliminary examination read to the witness was admissible only for impeachment and that she was using the transcript only to assist her with following the prosecutor's recitation of the testimony when impeaching the witness. Unlike the situation in *Ramsey*, the trial court did not consider testimony not admitted at trial and so there is no Confrontation Clause violation.[4]

## B. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant argues that his convictions must be reversed because he was denied the effective assistance of counsel. We disagree.[5]

"To prevail on a claim of ineffective assistance of counsel, a defendant bears a heavy burden to establish that (1) counsel's performance was deficient, meaning that it fell below an objective standard of reasonableness, and (2) but for counsel's error, there is a reasonable probability that the outcome of the defendant's trial would have been different." *People v Solloway*, 316 Mich App 174, 188; 891 NW2d 255 (2016).

Defendant first argues that trial counsel was ineffective by failing to engage in plea negotiations. The subject of a plea agreement was briefly addressed at defendant's arraignment and final conference. When the court enquired as to whether plea negotiations were possible, the prosecutor advised the court that no plea offers had been made to defendant, but that he was available to discuss plea offers after the arraignment. Defense counsel stated that he could not do so that day because he was in trial in another courtroom, but that he would go speak with the prosecution about it on another day. At the *Ginther*[6] hearing, defense counsel testified that he approached the prosecutor "probably four or five times about a plea," and that the prosecution was unwilling to offer a reduced plea. The prosecutor testified that he could not recall if he ever spoke to defense counsel about a plea bargain or if he ever told counsel that no plea offers would be made.

---

[4] We reached the same conclusion in *People v Walter*, 41 Mich App 109; 199 NW2d 651 (1972). Although that case is not precedentially binding under MCR 7.215(J)(1) because it was published before November 1, 1990, we find its reasoning persuasive.

[5] "Whether a person has been denied effective assistance of counsel is a mixed question of fact and constitutional law." *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). "A judge first must find the facts, and then must decide whether those facts constitute a violation of the defendant's constitutional right to effective assistance of counsel." *Id*. We review the trial court's factual findings for clear error and reviews questions of law de novo. *People v Lane*, 308 Mich App 38, 67-68; 862 NW2d 446 (2014).

[6] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

-4-

Trial counsel further testified at the *Ginther* hearing that after defendant's arrest, he interviewed defendant five to six times while he was at the county jail. According to counsel, during every visit, the subject of a plea was discussed, but defendant consistently indicated that he was "never, ever interested in a plea," and adamantly stated that he was going to trial to pursue a self-defense theory. Although defendant denied that trial counsel discussed the possibility of a plea, the trial court found that defendant's testimony was not credible because he testified that his attorney came to see him only twice, while the jail records were consistent with counsel's testimony that he had met with defendant on five or six occasions.

Given this evidence, and the trial court's credibility determination, defendant has failed to meet his burden of establishing that trial counsel's performance fell below an objective standard of reasonableness.

Further, even assuming that trial counsel unreasonably failed to initiate plea negotiations with the prosecutor's office, defendant has not established prejudiced. "[A]s at trial, a defendant is entitled to the effective assistance of counsel in the plea-bargaining process." *People v Douglas,* 496 Mich 557, 591-592; 852 NW2d 587(2014). In the context of pleas, a defendant must establish that the outcome of the plea process would have been different with competent advice. *Lafler v Cooper*, 566 US 156, 163; 132 S Ct 1376; 182 L Ed 2d 398 (2012). There is no evidence that if trial counsel had approached the prosecutor about a possible plea, a plea would have been forthcoming. At the *Ginther* hearing, defendant presented the affidavit of a criminal defense attorney with 32 years of experience, who testified that when a defendant is charged with open murder or murder in the first degree, absent extraordinary circumstances, the standard plea offer in Wayne County is a guilty plea to murder in the second degree. This, however, is exactly the result defendant faced at the conclusion of the bench trial. Thus, defendant has failed to establish that he was prejudiced by trial counsel's alleged deficient performance.

Defendant also argues that trial counsel was ineffective for failing to adequately inform him about the strength of his case, the nature of the charges against him, and the consequences of a guilty plea on the charges. He contends that as a result of these failings, he was unable to make an informed choice about whether to proceed to trial.

Conflicting testimony was presented at the *Ginther* hearing regarding the exchange of information between defendant and his trial counsel. Trial counsel claimed that he spoke with defendant about the legal issues in the case, the burden of proof, and the difficulty of arguing self-defense given that the victim never produced a weapon. Trial counsel further testified that he did explain that the trier of fact could reach a verdict of second-degree murder. Counsel admitted that he never showed defendant the surveillance video, but asserted that he explained the video's content to defendant, and that defendant never asked to see it. When asked if it would have been important for defendant to see the video, trial counsel replied, "He was there when it happened," and stated that defendant had told him "exactly what the video showed." Trial counsel agreed that defendant's statement to the police contradicted what the surveillance video showed, and that the false exculpatory statement was damaging. When asked if he explained to defendant the penalties for the various charges, trial counsel testified that it was not necessary to do so because defendant told him what the penalties were. Counsel did inform defendant that the penalties were "pretty egregious."

By contrast, defendant testified that trial counsel explained that the charge was open murder, but denied that counsel explained what the prosecutor was required to prove for a conviction. Defendant further asserted that trial counsel never explained his chances of success or the sentences he faced, if convicted of the charged offenses or any lesser offense. Defendant acknowledged that it was commonly known that a first-degree-murder conviction could result in life in prison. According to defendant, although he asked, trial counsel never showed him the surveillance video or described its contents. He testified that he did not actually see the video until after his conviction, and claimed that if he had seen it before the trial, he would have insisted that defense counsel pursue plea negotiations. Defendant claimed that because trial counsel failed to spend sufficient time with him, there was never an opportunity to request that counsel pursue plea negotiations. As noted earlier, however, the trial court found that defendant's testimony was not credible.

Accordingly, we conclude that defendant has failed to establish ineffective assistance of counsel in this regard. Defendant's assertion that he lacked sufficient information to make meaningful decisions related to seeking a plea had little bearing on the outcome in light of his consistent position that he felt threatened and had acted in self-defense. At the *Ginther* hearing, by which time defendant had seen the surveillance video, defendant continued to assert that he acted in self-defense. This testimony again bolsters trial counsel's testimony that defendant was unwilling to consider a plea. Further, defendant's testimony undermines the credibility of his assertions that had he been adequately advised by his attorney, he would have insisted that trial counsel pursue plea negotiations. In light of defendant's continued assertions that he was innocent because he allegedly acted in self-defense, it is unlikely that had defendant been more fully informed, that this would have prompted him to insist that his trial counsel initiate plea negotiations.

Accordingly, we are not left with a definite and firm conviction that the trial court erred when it found that defendant failed to show prejudice stemming from trial counsel's alleged deficient performance.

## C. LESSER INCLUDED OFFENSE

Next, defendant argues that the trial court erred by failing to consider the lesser included offense of manslaughter and convicting him instead of second-degree murder. We disagree.[7]

"Manslaughter is a necessarily included lesser offense of murder." *People v Gillis*, 474 Mich 105, 137; 712 NW2d 419 (2006). "[T]o show voluntary manslaughter, one must show that defendant killed in the heat of passion, the passion was caused by adequate provocation, and there was not a lapse of time during which a reasonable person could control his passions." *People v Reese*, 491 Mich 127, 143; 815 NW2d 85 (2012) (citation omitted).

---

[7] A trial court's factual findings in a bench trial are reviewed for clear error and its conclusions of law de novo. *Ligon v Detroit*, 276 Mich App 120, 124; 739 NW2d 900 (2007).

The court did consider this charge, but properly rejected it because the evidence did not show adequate provocation. "The determination of what is reasonable provocation is a question of fact for the factfinder." *People v Pouncey*, 437 Mich 382, 389; 471 NW2d 346 (1991). Here, the confrontation was over insulting comments made by the victim against defendant, his father, and the alleged endangerment of defendant's dogs. Although the victim became enraged, he maintained his distance from defendant. Further, while early on in the confrontation, the victim might have made a slight gesture towards his concealed weapon, he never brandished it. Indeed, the victim never removed his gun from the holster. The video evidence and eyewitness testimony confirmed that at the time he was shot, the victim was standing with his arms at his side, his hands empty, and the gun he carried was still holstered at his side. Under these circumstances, the trial court did not err when it concluded that the confrontation did not rise to the level where a reasonable person would lose control. "The provocation necessary to mitigate a homicide from murder to manslaughter is that which causes the defendant to act out of passion rather than reason." *Pouncey*, 437 Mich at 389. Adequate provocation is that "which would cause the reasonable person to lose control." *Id*.

Therefore, the trial court did not err when it failed to find defendant guilty of manslaughter.

## D. SENTENCING

Defendant requests that his sentence be vacated and that his case be remanded to a different judge. He asserts that the trial court sentenced him pursuant to a blanket policy of imposing a sentence at the top of the guidelines on defendants who exercise their right to a trial rather than pleading guilty. Defendant did go to trial and did receive the highest sentence that can be imposed within the guidelines.

In *People v Smith*, unpublished per curiam opinion of the Court of Appeals, issued November 22, 2016 (Docket No. 328477), we addressed this issue in regard to the same trial judge. In that case, we admonished Judge Lillard for her practice of sentencing defendants who proceed to trial at the top of the guidelines range. *Id*. at 5. In *Smith,* this Court found that the trial court erred when it employed this practice because it resulted in the failure to provide the defendant with an individualized sentence. *Id*. at 6. This Court noted:

> In this case, the trial court sentenced defendant pursuant to its "practice" of sentencing defendants "to the top of your guidelines" following a jury trial. According to the court, the purpose of its practice is "not to punish people for exercising their right to go to trial," but to "reward [ ] people who accept—who accept responsibility for their behavior and plead guilty in advance of trial." The distinction drawn by the trial court is unconvincing. The court's statement that its practice rewards defendants who plead guilty strongly implied that those defendants are not as a matter of routine sentenced to the high end of their minimum sentence range. Thus, had defendant pleaded guilty, he would have received a lesser sentence. The court may not have intended to punish defendant for exerting his Fifth Amendment rights, but the impact is the same regardless. [*Id*. at 6.]

We agree that a policy of sentencing all defendants who go to trial to the top of the guidelines is fundamentally inconsistent with the principle of individualized sentences.

The judge's policy also runs afoul of the principle that "[a]court cannot base its sentence even in part on a defendant's refusal to admit guilt." *People v Hatchett,* 477 Mich 1061; 728 NW2d 462 (2007); *People v Yennior*, 399 Mich 892; 282 NW2d 920 (1977). The right to trial by jury in a criminal felony prosecution is among the most fundamental rights provided by our judicial system. See *People v Allen*, 466 Mich 86, 90; 643 NW2d 227 (2002). Moreover, "[i]t is a violation of due process to punish a person for asserting a protected statutory or constitutional right." *People v Ryan*, 451 Mich 30, 35; 545 NW2d 612 (1996).

Our opinion in *Smith* was issued on November 22, 2016. The sentencing in this case occurred on July 30, 2014, well before that date. Nearly two years later, on July 20, 2016, during a post-trial hearing, the trial judge confirmed that this was her sentencing practice. The relevant colloquy reads:

> *Defense counsel*: As your honor knows, it's the practice of this Court to sentence to the top of the guidelines after a defendant goes to trial –
>
> *The Court*: Sometimes higher.[8]

Courts, including the United States Supreme Court, have sometimes struggled to articulate the precise line between rewarding a defendant for pleading guilty, which is routine in plea bargains, and punishing a defendant for asserting his constitutional right to trial.[9] See *United States v Jackson*, 390 US 570; 88 S Ct 1209; 20 L Ed 2d 138 (1968) (statute found unconstitutional where trial by jury provides for a greater possible sentence than bench trial);

---

[8] In a post-trial hearing on February 17, 2017, several months after we released *Smith*, the trial court made the following which occurred after we issued *Smith*, Judge Lillard stated:

> "To the extent there is a perception in this building or maybe I have said something that has lead [sic] anyone to believe that after a jury trial if someone is found guilty they will automatically be sentence at the top of their guidelines that's not true."

The judge went on to say that "if someone is willing to accept responsibility for what they've done and they plead guilty that there should be some sort of reward . . . [a]nd to the extent I am able to do that by sentencing people at the bottom of their guidelines when there is no sentencing agreement and they have plead guilty, I do routinely do that."

While these remarks are reassuring, the judge's prior remarks and actions cannot be undone after the fact. And an improper sentencing policy can only be cured by a change in practice, not a change of words.

[9] For a discussion of these issues, see LaFave et al, Criminal Procedure (4th ed), § 21.2(a)-(c).

*Corbitt v New Jersey*, 439 US 212; 99 S Ct 492; 58 L Ed 2d 466 (1978) ("a State may encourage a guilty plea by offering substantial benefits for return for the plea.").

In this case, however, we need not resolve any tension between these principles. Here, the judge's sentencing policy was to impose the maximum guideline sentence when a defendant was convicted after going to trial. This does not demonstrate a process where a court determines what an individualized sentence should be and then reduces it as an inducement or reward for the plea.[10] Rather, it is an automatic imposition of the maximum guideline sentence; a policy that ignores the requirement of individualized sentencing and promises not a degree of mercy as a reward for a plea, but rather a harsh sentence as a punishment for seeking a trial. Thus, while an admission of guilt may be considered as indicating remorse and may be grounds to lessen punishment that would otherwise be imposed, there is no doubt that sentencing defendants to the top of the guidelines because they went to trial or to increase their sentence in any way for doing so, is a violation of both due process and our law governing sentencing.

We affirm defendant's convictions, vacate defendant's sentences, and remand for resentencing before a different judge. We do not retain jurisdiction.

/s/ Kathleen Jansen
/s/ Deborah A. Servitto
/s/ Douglas B. Shapiro

---

[10] In *People v Godbold*, 230 Mich App 508, 516; 585 NW2d 13 (1998), we held that judges may "reduce otherwise valid sentences for defendants who opt for bench trials" rather than jury trials. In that case, we quoted, at length, the trial judge's description of his sentencing approach, i.e. that he determines what he believes is the proper individualized sentence based on the offender and the offense and then, if defendant has opted for a bench trial, provides a sentence concession. This case is not comparable to *Gobold*.