*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
January 19, 2023

Plaintiff-Appellee,

v

No. 355529
Kent Circuit Court
LC No. 16-010254-FC

CHRISTIAN WILLIAM HILLMAN,

Defendant-Appellant.

Before: RIORDAN, P.J., and MARKEY and REDFORD, JJ.

PER CURIAM.

Defendant appeals by delayed leave granted[1] the trial court's order denying his motion for relief from judgment. A jury found defendant guilty of second-degree murder, MCL 750.317. On appeal, defendant argues that the trial court erred by sentencing him under its personal policy of issuing minimum sentences for second-degree murder convictions at the high end of the guidelines range, rather than fashioning an individualized sentence as required by law. We disagree and affirm.

## I. BACKGROUND

On September 29, 2016, defendant, 18 years old at the time, engaged in a road rage incident in which he fought with another motorist, 64-year-old William McFarlan, in a church parking lot. After defendant knocked McFarlan to the ground unconscious, defendant kicked him in the head repeatedly with steel-toed boots. McFarlan never recovered and died in the hospital just over one month later.

The trial court sentenced defendant to 270 months to 100 years' imprisonment. The trial court stated the following regarding its imposition of the 270-month minimum sentence:

---

[1] *People v Hillman*, ___ Mich ___; 967 NW2d 611 (2022).

The undisputed facts of this case verify that the defendant kicked the victim, Mr. McFarlan, in the head with steel-toed boots, while Mr. McFarlan was unconscious, laying on the ground. It is also undisputed that Mr. McFarlan died as a result of the head injuries inflicted by Mr. Hillman.

By perpetrating this heinous and vicious attack, the defendant deprived Mr. McFarlan's family of a husband, father, and grandfather. The defendant's actions merit a significant sentence under the advisory sentencing guidelines. The guidelines call for a minimum sentence between 162 months and 270 months in the Michigan Department of Corrections.

Therefore, the [c]ourt will impose a minimum sentence of 270 months, which is 22-and-a-half years, to 100 years in the Michigan Department of Corrections. Defendant is entitled to 267 days that he has served in the Kent County Jail as jail credit.

Defendant appealed and this Court affirmed his conviction.[2] Our Supreme Court denied leave to appeal[3] and denied defendant's motion for reconsideration.[4] After defendant exhausted his appellate options, information emerged regarding the same trial court's statements in another case regarding its sentencing practices, specifically when sentencing defendants convicted of second-degree murder. See *People v Gonzalez*, unpublished per curiam opinion of the Court of Appeals, issued February 25, 2020 (Docket No. 344076).[5] In *Gonzalez*, a panel of this Court vacated the defendant's sentence because the same trial court, while inquiring whether the defendant intended to enter a plea agreement, informed him that it "would likely go to the high end of the guidelines because that's what I have done traditionally in other second-degree murder cases." *Id*. at 7.

In light of the panel's *Gonzalez* decision, defendant moved for relief from judgment and to be resentenced before a different judge. The trial court denied defendant's motion in a written opinion and order in which it noted that

in hindsight . . . the statements made to Defendant Gonzalez, that he would receive a sentence at the top of the sentencing guidelines if convicted of second-degree murder, were improper. The [c]ourt made such statements based on its erroneous

---

[2] *People v Hillman*, unpublished per curiam opinion of the Court of Appeals, issued January 17, 2019 (Docket No. 339917).

[3] *People v Hillman*, 504 Mich 903; 929 NW2d 355 (2019).

[4] *People v Hillman*, 504 Mich 974; 933 NW2d 291 (2019).

[5] *Gonzalez* is cited throughout this opinion primarily for its factual content. To the degree this unpublished case is cited for its legal analysis and conclusion, it is not binding precedent. See MCR 7.215(C)(1).

assumption that any sentence imposed within the sentencing guidelines would be considered reasonable.

The trial court, however, explained that at the time it sentenced defendant it did not do so according to a sentencing policy but had based the prior record variables and offense variables featured in the presentence investigation report and defendant's egregious behavior toward his 64-year-old victim in this case. The trial court quoted its own statement from the sentencing hearing, that "defendant's actions merit a significant sentence under the advisory sentencing guidelines." The record indicates that the court analyzed its previous sentencing decision-making and concluded that defendant suffered no actual prejudice, and therefore, denied defendant's motion. Defendant appealed. This Court denied leave to appeal.[6] Defendant sought leave to appeal the denial to our Supreme Court which in lieu of granting leave remanded the case to this Court to consider this one issue as on leave granted. *Hillman*, ___ Mich ___.

## II. STANDARD OF REVIEW

"We review a trial court's decision on a motion for relief from judgment for an abuse of discretion and its findings of facts supporting its decision for clear error." *People v Swain*, 288 Mich App 609, 628; 794 NW2d 92 (2010). "An abuse of discretion occurs when the court chooses an outcome that falls outside the range of reasonable and principled outcomes." *People v Unger*, 278 Mich App 210, 217; 749 NW2d 272 (2008). A trial court also abuses its discretion when it commits an error of law. *People v Giovannini*, 271 Mich App 409, 417; 722 NW2d 237 (2006). We may defer to the trial court's judgment if it constitutes a reasonable or principled outcome. *People v Babcock*, 469 Mich 247, 269; 666 NW2d 231 (2003). Regarding the clear-error standard, a "trial court's findings are clearly erroneous if, after we have reviewed the entire record, we are definitely and firmly convinced that it made a mistake." *People v Armstrong*, 305 Mich App 230, 242; 851 NW2d 856 (2014).

## III. ANALYSIS

Defendant argues that the trial court failed to consider defendant's young age, science regarding brain development, and lack of criminal history to determine an individualized, proportionate sentence, but instead sentenced him under its personal policy. We disagree.

"The premise of our system of criminal justice is that, everything else being equal, the more egregious the offense, and the more recidivist the criminal, the greater the punishment." *Babcock*, 469 Mich at 263. "[T]he key test is whether the sentence is proportionate to the seriousness of the matter, not whether it departs from or adheres to the guidelines' recommended range." *People v Steanhouse*, 500 Mich 453, 475; 902 NW2d 327 (2017), quoting *People v Milbourn*, 435 Mich 630, 661; 461 NW2d 1 (1990). When applying the proportionality standard, several factors may be considered, including:

---

[6] *People v Hillman*, unpublished order of the Court of Appeals, entered February 23, 2021 (Docket No. 355529).

(1) the seriousness of the offense; (2) factors that were inadequately considered by the guidelines; and (3) factors not considered by the guidelines, such as the relationship between the victim and the aggressor, the defendant's misconduct while in custody, the defendant's expressions of remorse, and the defendant's potential for rehabilitation. [*People v Lawhorn*, 320 Mich App 194, 207; 907 NW2d 832 (2017) (quotation marks and citation omitted).]

Other factors for determining whether a sentence is proportionate to the offense and the offender's conduct include: "whether the guidelines accurately reflect the seriousness of the crime" and "factors considered by the guidelines but given inadequate weight." *People v Dixon-Bey*, 321 Mich App 490, 525; 909 NW2d 458 (2017) (citations omitted).

Subchapter 6.500 of the Michigan Court Rules provides "the exclusive means to challenge a conviction in Michigan once a defendant has exhausted the normal appellate process." *People v Watroba*, 193 Mich App 124, 126; 483 NW2d 441 (1992). When seeking relief from judgment, a defendant carries the burden of establishing that he is entitled to the relief requested. MCR 6.508(D). Under MCR 6.508(D)(3), a trial court may not grant relief from an issue that could have been raised in his direct appeal unless the defendant can show:

(a) good cause for failure to raise such grounds on appeal or in the prior motion, and

(b) actual prejudice from the alleged irregularities that support the claim for relief. As used in this subrule, "actual prejudice" means that,

\* \* \*

(*iv*) in the case of a challenge to the sentence, the sentence is invalid. [MCR 6.508(D)(3)(a) and (b).]

As the rule indicates, "to be entitled to relief under MCR 6.508(D)(3), both 'good cause' and 'actual prejudice' must be established." *People v Kimble*, 470 Mich 305, 313-314; 684 NW2d 669 (2004).

In this case, the parties agree that good cause was established when the opinion released by the *Gonzalez* panel indicated that the trial court followed a policy or habit of sentencing those convicted of second-degree murder to the maximum recommended under the minimum sentencing guidelines range. The parties differ, however, on whether defendant established actual prejudice regarding his own sentencing, which took place almost a year before the sentencing in *Gonzalez*.

As MCR 6.508(D)(3)(b)(*iv*) states, when a sentence is in question, actual prejudice is shown when the sentence imposed is invalid. A sentence may be invalid for any number of reasons. Our Supreme Court explained:

Clearly a sentence beyond statutory limits is invalid. A sentence within statutory limits may also be invalid on a number of grounds. It is invalid if the sentencing court relies on constitutionally impermissible considerations, such as the defendant's constitutionally infirm prior convictions, or improperly assumes a

defendant's guilt of a charge which has not yet come to trial, or the court fails to exercise its discretion because it is laboring under a misconception of the law, or conforms the sentence to a local sentencing policy rather than imposing an individualized sentence. More recently, this Court has held invalid sentences which do not comply with essential procedural requirements such as failure to utilize a "reasonably updated" presentence report or to provide the defendant and his counsel with the opportunity to address the court before sentence is imposed. [*People v Whalen*, 412 Mich 166, 169-170; 312 NW2d 638 (1981) (citations omitted).]

This Court has also expressed that a sentence is generally invalid when it is based on a misconception of the law. *People v Thomas*, 223 Mich App 9, 11; 566 NW2d 13 (1997), citing *Whalen*, 412 Mich at 169-170.

In this case, the trial court acknowledged in its opinion that in the *Gonzalez* case it made improper statements "based on its erroneous assumption that any sentence imposed within the sentencing guidelines would be considered reasonable." Whether the trial court acted under that "erroneous assumption" almost a year earlier when it sentenced defendant, however, has not been established and such lacks relevance because MCL 769.34(10) requires this Court to affirm a minimum sentence that falls within a properly calculated sentencing guidelines range unless the trial court relied on inaccurate information. See *People v Schrauben*, 314 Mich App 181, 196; 886 NW2d 173 (2016). Nevertheless, this Court has recognized that a sentence may be invalidated because "a policy of sentencing all defendants who go to trial to the top of the sentencing guidelines range is fundamentally inconsistent with the principle of individualized sentences." *People v Pennington*, 323 Mich App 452, 466; 917 NW2d 720 (2018). In *Pennington*, a trial court's acknowledged policy of automatically imposing the upper end of the minimum sentencing guidelines range, "sometimes higher," on those who were convicted by a jury, violated those defendants' due-process rights and "ignore[d] the requirement of individualized sentencing." *Id*. at 467-468.

Although the *Gonzalez* panel focused on the trial court's statement that it traditionally sentenced those convicted of second-degree murder on the high end of the minimum guidelines range, a critical distinction pertinent to this case exists between *Pennington* and the trial court's handling of the defendant in the *Gonzalez* case. Although the trial court in *Gonzalez* indicated its inclination to impose the maximum, it did not express that such outcome would be a certainty, nor did it express that it would do so automatically.[7] Moreover, the trial court also intimated in *Gonzalez* that it considered deviating downward from the maximum minimum if merited by the individual case, saying, "I don't think I'd deviate from *your* case—in *your* case." (Emphasis added.)

A key aspect further distinguishes this case from both *Pennington* and *Gonzalez*. This case involved the trial court's sentencing, not an earlier attempt to discourage defendant from proceeding to jury trial and accept a plea. Further, sentencing in this case took place almost a year

---

[7] Notably, the defendant in *Gonzalez* also faced the possibility of being convicted of the more severe charge, first-degree murder.

before the trial court sentenced the defendant in *Gonzalez*, making it more plausible that the trial court imposed defendant's sentence before it realized it was habitually sentencing convicted second-degree murderers to the high end of the minimum guidelines range. The trial court confirmed in its order denying defendant's motion that it had not established any sentencing policy at the time of defendant's sentencing hearing. Defendant has not demonstrated that the trial court had a set policy and practice at the time of his sentencing.

Regardless, even if the trial court did not adequately explain at sentencing that defendant's sentence was independently determined without resort to a fixed policy, the trial court expressed satisfactory grounds in its opinion and order when ruling on defendant's motion for relief for its sentencing decision. The record reflects that the trial court considered defendant's request to look further into the aspects of defendant's age and brain development but found no merit to those factors which defendant sought to use to excuse his behavior. Further, the trial court considered other factors such as his age as a teenage adult compared to that of the much older victim he fought and then brutally continued to beat while unconscious. The trial court did not err in concluding that defendant's actions were "egregious" in the "heinous and vicious attack" and "merit[ed] a significant sentence." Evidence established defendant's vicious attack on his victim and continued violent aggression even after the victim lay unconscious on the ground.

The trial court's explanation for its imposition of the maximum sentence within the minimum sentencing guidelines range followed due consideration of the seriousness of the offense and the offender in this case. Defendant has failed to establish that the trial court imposed an invalid sentence under the circumstances of this case. Therefore, the trial court did not abuse its discretion when it found that defendant suffered no actual prejudice and denied defendant's motion for relief from judgment.

Affirmed.

/s/ Michael J. Riordan
/s/ Jane E. Markey
/s/ James Robert Redford