*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

MARK ALAN ARIZOLA,

        Defendant-Appellant.

UNPUBLISHED
September 19, 2024

No. 366508
Barry Circuit Court
LC No. 2022-000411-FH

Before: GADOLA, C.J., and K. F. KELLY and MARIANI, JJ.

PER CURIAM.

Defendant pleaded guilty to felon in possession of a firearm (felon-in-possession), MCL 750.224f, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. The trial court sentenced defendant as a fourth-offense habitual offender, MCL 769.12, to consecutive sentences of 240 to 480 months' (20 to 40 years') imprisonment for felon-in-possession and 2 years' imprisonment for felony-firearm. Defendant appeals by leave granted,[1] challenging his sentence. We vacate defendant's sentence and remand for resentencing.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Upon arriving at a home to investigate a nonfatal shooting, deputies discovered a man with a single gunshot wound to his abdomen seated on the kitchen floor. The man was later identified as a resident of the home and the boyfriend of defendant's sister. The deputies also discovered two other residents in the home, one of whom was defendant's sister. Though the initial interviews of the residents were confusing, subsequent interviews revealed that defendant's sister and her boyfriend had been arguing in their shared bedroom. Defendant entered the bedroom to investigate and, upon doing so, saw the two positioned as if defendant's sister was being choked by her boyfriend. Defendant then shot his sister's boyfriend. When interviewed by the police, defendant initially feigned surprise about the shooting. After being confronted with what the detectives had

_____

[1] *People v Arizola*, unpublished order of the Court of Appeals, entered August 8, 2023 (Docket No. 366508).

learned from other interviews, however, defendant became emotional and admitted to shooting his sister's boyfriend and subsequently disposing of the gun. Defendant explained that he believed that his sister was being choked and had only intended to shoot his sister's boyfriend in the leg to protect his sister, but he missed the shot. Defendant pleaded guilty to felon-in-possession, felony-firearm, and fourth-offense habitual offender status.

The presentence investigation report (PSIR) indicated that defendant had a significant criminal history, including eight prior felony convictions and 19 prior misdemeanor convictions since 1992.[2] As a result, defendant had been imprisoned twice, sentenced to jail 14 times, and placed on probation six times. The PSIR also indicated that, at the time that defendant had pleaded guilty in this case, he was incarcerated for pleading no contest to delivery of a controlled substance, less than 50 grams, MCL 333.7401(2)(a)(*iv*), in an unrelated case.

Defendant's recommended minimum sentencing guidelines range for felon-in-possession was 19 to 76 months, and, because of his status as a fourth-offense habitual offender, the maximum possible sentence was life in prison. The prosecutor requested that defendant be sentenced to a minimum of 180 months' imprisonment for felon-in-possession. The prosecutor explained that the guidelines did not adequately account for all of defendant's scorable misdemeanors and low-severity felonies because the guidelines stopped scoring the convictions after seven misdemeanors and four low-severity felonies. The prosecutor also argued that the guidelines failed to account for defendant's poor prospect for rehabilitation, noting that he had failed probation four times and had incurred multiple parole violations for assaultive behavior. Finally, the prosecutor argued that the guidelines failed to adequately account for defendant's pattern of violent criminal behavior, as clearly demonstrated by defendant's past convictions and the fact that defendant shot someone during the commission of the sentencing offense.

The trial court decided to depart upward from the 19-76-month guidelines range, sentencing defendant 240 to 480 months' imprisonment for felon-in-possession, to be served consecutively to two years' imprisonment for felony-firearm. In explaining its rationale for the departure, the trial court first noted that it was adopting all of the prosecution's statements by reference, that the statutory maximum in this case was life, and that, while caselaw "seems to be putting more and more hoops we have to jump through," precedent from our Supreme Court "rightly said that the sentencing guidelines were simply advisory" and "not binding on [the trial court] whatsoever."[3] The trial court then expressed its concerns about defendant's lengthy and violent criminal history, his poor prospect for rehabilitation, the seriousness of the sentencing offense, and the need to protect society. The court recited defendant's prior convictions, opining on their violent and dangerous nature, and noted that defendant had previously been in prison, on

_____

[2] At one point in the PSIR, it states that defendant had nine prior felony convictions and 18 prior misdemeanor convictions, but a review of the criminal-history information provided in the PSIR indicates that he had eight and 19, respectively. Either way, however, our disposition of the instant appeal remains the same.

[3] Accordingly, the trial court reasoned, if the statutory maximum "is five years . . . , I ought to be able to give five years. It doesn't say five years if A, B, and C . . . ."

parole, and on probation—all of which indicated to the court that the likelihood of defendant engaging in more such violent crime was "almost absolute." The court also noted that the offense in this case was "very serious" because "[s]omebody got shot" and that a number of defendant's scorable prior misdemeanors and felonies were, in effect, not accounted for by the recommended guidelines range because they went beyond the number of convictions needed to receive a maximum score.[4] The court then concluded that "[t]his is an easy above the guidelines sentence" and "[i]t just depends [on] what I think is appropriate here," and that defendant, in the court's view, "needs to be outta commission" and not "give[n] a sentence where he gets out and he has the opportunity to hurt somebody else."

Defendant subsequently applied for leave to appeal to this Court, which was granted.

## II. DEPARTURE SENTENCE

Defendant argues that he is entitled to resentencing because the trial court imposed an unreasonable and disproportionate upward departure from his recommended minimum sentencing guidelines range. We conclude that the trial court did not sufficiently justify its sentencing decision, and we therefore vacate defendant's sentence and remand for resentencing.

## A. STANDARD OF REVIEW

"A sentence that departs from the applicable guidelines range will be reviewed by an appellate court for reasonableness." *People v Lockridge*, 498 Mich 358, 392; 870 NW2d 502 (2015); see also *People v Posey*, 512 Mich 317, 350 n 15; 1 NW3d 101 (2023). "[T]he relevant question for appellate courts reviewing a sentence for reasonableness is whether the trial court abused its discretion by violating the principle of proportionality." *People v Dixon-Bey*, 321 Mich App 490, 520; 909 NW2d 458 (2017) (quotation marks, citation, and ellipsis omitted). "A trial court abuses its discretion when it applies a minimum sentence that violates the principle of proportionality, which occurs when the trial court 'fail[s] to provide adequate reasons for the extent of the departure sentence imposed . . . .' " *People v Warner*, 339 Mich App 125, 153-154; 981 NW2d 733 (2021), quoting *People v Steanhouse*, 500 Mich 453, 476; 902 NW2d 327 (2017) (alteration and ellipsis in original). "[T]he key test is whether the sentence is proportionate to the seriousness of the matter, not whether it departs from or adheres to the guidelines' recommended range." *Steanhouse*, 500 Mich at 472 (quotation marks and citation omitted).

## B. SENTENCING GUIDELINES AND PRINCIPLE OF PROPORTIONALITY

While the guidelines are now advisory rather than mandatory, they "remain a highly relevant consideration in a trial court's exercise of sentencing discretion" that "trial courts must consult" and duly "take . . . into account when sentencing." *Lockridge*, 498 Mich at 391 (quotation

---

[4] On the latter point, the trial court expressed its belief that "when you get to a certain level and you actually have to stop counting [prior offenses], that's to me when it oughta be automatic, the maximum [of] whatever . . . the charge is. If it's a ten-year, it oughta be a ten-year."

marks and citation omitted). Relevant factors to consider when applying the principle of proportionality include:

> (1) the seriousness of the offense; (2) factors that were inadequately considered by the guidelines; and (3) factors not considered by the guidelines, such as the relationship between the victim and the aggressor, the defendant's misconduct while in custody, the defendant's expressions of remorse, and the defendant's potential for rehabilitation. [*People v Walden*, 319 Mich App 344, 352-353; 901 NW2d 142 (2017) (quotation marks and citation omitted).]

A trial court's decision to depart from the sentencing guidelines should not be based on factors that are "contemplated by at least one offense variable" if the trial court offers no reasoning as to why the scoring of that offense variable was "insufficient to reflect the nature of" the case's circumstances. *Dixon-Bey*, 321 Mich App at 526-527; see also MCL 769.34(3)(b) ("The court shall not base a departure on an offense characteristic or offender characteristic already taken into account in determining the appropriate sentence range unless the court finds from the facts contained in the court record, including the [PSIR], that the characteristic has been given inadequate or disproportionate weight.").

In making a proportionality determination, "a trial court must justify the sentence imposed in order to facilitate appellate review, which includes an explanation of why the sentence imposed is more proportionate to the offense and the offender than a different sentence would have been[.]" *Dixon-Bey*, 321 Mich App at 525 (quotation marks and citations omitted). This includes both an explanation of the reasons for imposing a departure sentence and an "explanation for the *extent* of the departure independent of the reasons given to impose a departure sentence." *People v Smith*, 482 Mich 292, 305-306; 754 NW2d 284 (2008). Indeed, "[e]ven where some departure appears to be appropriate, the extent of the departure (rather than the fact of the departure itself) may embody a violation of the principle of proportionality." *People v Milbourn*, 435 Mich 630, 660; 461 NW2d 1 (1990). The remedy when the trial court fails to adequately justify the extent of the departure sentence imposed is to remand to the trial court for resentencing. *Steanhouse*, 500 Mich at 476; *Smith*, 482 Mich at 311.

## C. ANALYSIS

In this case, defendant's recommended minimum sentencing guidelines range was 19 to 76 months' imprisonment for his guilty plea as a fourth habitual offender to felon-in-possession. The top end of that range—76 months—was the highest possible sentence for that offense under the guidelines; no additional scoring of offense variables (OVs) or prior record variables (PRVs) could have increased it. The trial court departed upward from that top end by 164 months and sentenced defendant to 240 to 480 months' imprisonment. This was an upward departure of nearly 14 years, and resulted in a minimum sentence that more than tripled the top end of what the guidelines contemplated for this offender and offense.

As the trial court correctly observed, the guidelines range for defendant was advisory, and the court was not required to follow it in sentencing defendant. But as our Supreme Court has repeatedly made clear, the trial court was required to follow the principle of proportionality in choosing its sentence and, in so doing, "consult" and duly "take . . . into account" the guidelines,

which remain "highly relevant" to the court's "exercise of sentencing discretion." *Lockridge*, 498 Mich at 391 (quotation marks and citation omitted); see *Steanhouse*, 500 Mich at 474-475 (reaffirming these principles); *Posey*, 512 Mich at 347-349, 351 (same); see also *Dixon-Bey*, 321 Mich App at 530, quoting *Milbourn*, 435 Mich at 656 (recognizing that, in cases where "the Legislature has set no minimum or has prescribed a maximum of a lengthy term of years or life," the sentencing guidelines, although advisory, still provide "the best 'barometer' of where on the continuum from the least to the most threatening circumstances a given case falls") (quotation marks omitted). And as our Supreme Court has likewise made clear, the trial court was required, in exercising its sentencing discretion, to adequately explain the reasons for both the fact of a departure from the guidelines and the extent of that departure. See *Smith*, 482 Mich at 305-306; *Milbourn*, 435 Mich at 660.

We certainly recognize the challenges that sentencing courts face in implementing these requirements, particularly as the law surrounding them continues to develop. In this case, however, we cannot conclude that the requirements were adequately met such that defendant's sentence can be affirmed. While the trial court identified permissible justifications for choosing to depart from the guidelines, it erred in its consideration of them. Furthermore, the court did not meaningfully address the *extent* of its chosen departure. As a result, the trial court failed to adequately justify, as it must, "why the sentence imposed is more proportionate to the offense and the offender than a different sentence would have been." *Dixon-Bey*, 321 Mich App at 525 (quotation marks and citations omitted). Resentencing is therefore required.

As to the offense itself, the trial court pointed to its seriousness in support of the decision to depart upward from the guidelines. This is, as a general matter, a valid consideration when determining the proportionality of a sentence. See *Walden*, 319 Mich App at 352-353. A trial court, however, may not base its departure on factors that are "contemplated by at least one offense variable" without explaining why the scoring of that offense variable was "insufficient to reflect the nature of" the case's circumstances. *Dixon-Bey*, 321 Mich App at 526-527; see also MCL 769.34(3)(b). In this case, the trial court simply stated that the underlying circumstances of the sentencing offense were "very serious" because "[s]omebody got shot." OVs 1, 3, and 9, however, were all scored to account for the fact that defendant's conduct resulted in one individual getting shot and injured and another being placed in danger of the same.[5] The trial court was required to expressly articulate why the scoring of these variables insufficiently reflected the nature of the case's circumstances such that the imposed departure sentence was necessary to embody the principle of proportionality. See *Dixon-Bey*, 321 Mich App at 526-527; MCL 769.34(3)(b). It failed to do so.

---

[5] OV 1 was scored at 25 points for defendant's discharge of a firearm at or toward his sister and his sister's boyfriend, see MCL 777.31(1)(a); OV 3 was scored at 10 points because the boyfriend of defendant's sister sustained a bodily injury requiring medical treatment, see MCL 777.33(1)(d); and OV 9 was scored at 10 points because both defendant's sister and his sister's boyfriend were placed in danger of injury or death when defendant fired a gun toward them, see MCL 777.39(1)(c).

As to the offender, the trial court relied heavily on its view of the length and violent nature of defendant's criminal history, which were indicative to the court of defendant's poor prospect for rehabilitation and the risk of danger to society that he posed. The trial court was entitled to determine that these considerations were not adequately accounted for by the sentencing guidelines and warranted a departure sentence. See *Walden*, 319 Mich App at 352-353; see also *People v Boykin*, 510 Mich 171, 183; 987 NW2d 58 (2022) (noting that "[a]n appropriate sentence should," among other things, consider "the reformation of the offender" and "the protection of society"). The court, however, erred in how it considered these factors.

In its sentencing explanation, the trial court emphasized its belief that the guidelines did not adequately account for the total number of defendant's prior convictions and the pattern of violent crime they reflected. Defendant did, in fact, have more scorable convictions than directly accounted for by his guidelines range, and this was, in general, a legitimate factor for the court to consider in assessing the proportionality of defendant's sentence. See *Walden*, 319 Mich App at 352-353. That said, the guidelines range accounted for defendant's status as a fourth habitual offender, and PRVs 1, 2, 5, and 7—which are specifically designed to account for a defendant's criminal and recidivist history—were all scored based on defendant's criminal record[6] and directly accounted for most of defendant's scorable prior convictions. The trial court's explanation did not reflect consideration of that fact, but instead simply recited defendant's prior convictions without apparent regard for whether they had already been directly accounted for by the guidelines' sentencing calculation, and without effort to articulate why the unaccounted-for portion, whatever the court may have viewed it to be, resulted in a disproportionate sentence warranting the departure imposed.[7] See MCL 769.34(3)(b).

Finally, the trial court failed to adequately address the *extent* of the departure it chose. See *Steanhouse*, 500 Mich at 476; *Smith*, 482 Mich at 305-306. The trial court concluded its sentencing explanation by stating that defendant's sentence was an "easy above the guidelines sentence," that

---

[6] In fact, while it did not affect defendant's guidelines range, it seems PRV 7 was scored to account for more of his record than it should have. Based on defendant's convictions for felony-firearm and delivery of a controlled substance, the trial court, at the prosecution's request, assessed the maximum 20 points for PRV 7. See MCL 777.57(1)(a). MCL 777.57(2)(b), however, expressly states that a defendant's felony-firearm conviction cannot be scored for purposes of PRV 7.

[7] The court, for instance, included each of defendant's prior felony convictions in its recitation, but all but two of those convictions were directly accounted for by defendant's PRV scores; the two that were not directly accounted for were low-severity felony convictions for possession of burglar's tools, MCL 750.116, and breaking and entering into a vehicle to steal property worth $1,000 or more but less than $20,000, MCL 750.356a(2)(c)(*i*), arising from an offense committed in 2004. Most of the prior misdemeanor convictions mentioned by the trial court in its recitation were also directly accounted for by defendant's PRV scores, and the ones mentioned by the court that were not directly accounted for arose from offenses committed 20-30 years ago. The court did not explain why, given what the PRV scores did and did not directly capture, the guidelines disproportionately failed to account for the pattern of violent crime it saw in these convictions such that the imposed departure sentence was warranted.

it believed that defendant should be put "outta commission" and not be "give[n] a sentence where he gets out and he has the opportunity to hurt somebody else," and that the imposed sentence simply depended on what it believed was "appropriate here." While such statements express the court's view that the guidelines' recommended sentence fell well short of what the court felt was warranted, they shed no light on how the court selected the particular departure sentence it did and why that sentence was necessary to better embody the principle of proportionality than a sentence that exceeded the guidelines by any lesser extent. Again, the guidelines—which themselves incorporate the principle of proportionality, see, e.g., *Steanhouse*, 500 Mich at 472—recommended a maximum minimum sentence of 76 months, the highest possible minimum sentence contemplated for any offender convicted of the sentencing offense at issue. The court more than tripled that top-end recommendation, but at no point did the court explain how it arrived at its chosen sentence of 240 to 480 months' imprisonment, or why that particular sentence was more proportionate to the offense and the offender than a different sentence would have been.[8] See *Dixon-Bey*, 321 Mich App at 525.

In sum, based on the record before us, the trial court failed to adequately justify the imposed departure sentence of 240 to 480 months. An adequate articulation of the court's sentencing rationale on the record was necessary both to ensure that defendant's sentence was proportional to the sentencing offense and the offender, and to allow for meaningful appellate review. This Court "cannot substitute its own judgment about why the departure was justified," nor can defendant's sentence "be upheld when the connection between the reasons given for departure and the extent of the departure is unclear." *Smith*, 482 Mich at 304. Given the deficiencies in the trial court's sentencing decision, we must vacate defendant's sentence and remand for resentencing. See *Steanhouse*, 500 Mich at 476; *Smith*, 482 Mich at 311; see also, e.g., *People v Parkins*, 507 Mich 916, 916-917; 956 NW2d 507 (2021) (remanding for resentencing because the trial court failed to explain both how the guidelines variables were insufficient and how the extent of the ultimate departure was justified).[9]

We vacate defendant's sentence and remand for resentencing. We do not retain jurisdiction.

/s/ Michael F. Gadola
/s/ Philip P. Mariani

---

[8] Indeed, not even the prosecution, whose arguments the trial court generally adopted by reference, advocated for a departure as significant as the one the court opted to impose.

[9] In light of this conclusion, we need not reach defendant's additional argument that, considering the trial court's comments regarding the automatic imposition of a maximum sentence when the number of prior offenses exceeds what the guidelines directly account for, the court improperly sentenced him based on "a policy that ignores the requirement of individualized sentencing." *People v Pennington*, 323 Mich App 452, 468; 917 NW2d 720 (2018).