*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

SABRENIA STRICKLAND,

      Defendant-Appellant.

UNPUBLISHED
February 03, 2026
9:11 AM

No. 368260
Wayne Circuit Court
LC No. 21-005702-01-FH

Before: BORRELLO, P.J., and MARIANI and TREBILCOCK, JJ.

PER CURIAM.

Defendant appeals as of right her jury-trial conviction of possession of a firearm during commission of a felony (felony-firearm), MCL 750.227b. Defendant was sentenced to two years' imprisonment for her conviction. On appeal, defendant argues her trial counsel provided ineffective assistance that resulted in her going to trial rather than accept a plea bargain. For the reasons set forth in this opinion, we affirm defendant's conviction and sentence.

## I. BACKGROUND

This appeal turns on whether trial counsel's alleged failure to share audio footage constituted ineffective assistance. The case arose out of a dispute between defendant and her next-door neighbor, Chantia Carter. Defendant and Carter had a poor relationship and had gotten into several verbal altercations, some involving the police. On May 22, 2021, Carter went outside to move her car so her fiancé could take his vehicle to work. Carter noticed defendant sitting on her porch. After her fiancé left, Carter pulled back into the driveway and was walking to her front door when she heard someone behind her. Carter turned, saw defendant with a revolver, and yelled: "She got a gun." Defendant walked toward Carter, blocking the front door, and said: "Just don't say nothing." Carter saw defendant's finger on the trigger of the gun, so she grabbed defendant's hand to prevent her from lifting the gun and shooting her. Defendant allegedly said: "This didn't have to be like this. I love you. You made me do this." Carter remembers this statement because it frightened her and led her to believe defendant was "definitely about to shoot [her]." Carter let go of defendant's hand, pushed defendant away, entered the house, and called the police.

Video footage of the encounter was captured on Carter's Ring doorbell camera. Defendant does not dispute the video accurately depicts her encounter with Carter as described above. A gun is visible in defendant's hand at several points in the video and defendant can be clearly heard saying, "Just don't say nothing," when Carter turns and sees defendant. As Carter holds defendant's hand to prevent her from lifting the gun, she yells for a person to call 911. While this is happening, defendant is quietly speaking, but her words are difficult to discern. Defendant was charged with felonious assault, MCL 750.82, and felony-firearm, MCL 750.227b.

The district court admitted and played the video without audio at the preliminary examination. Trial counsel confirmed defendant could see the video from where she was sitting in the courtroom before it was played. Carter testified she had a version with sound saved on her phone, so the parties were aware a version with audio was available. Although the audio was deemed relevant because it provides additional context to the interaction, it was considered not material since the essential facts needed to establish the elements of felonious assault—namely the visual depiction of defendant holding a gun and the assaultive act—could be proven with the video alone. During her testimony at the preliminary examination, Carter repeated what defendant said to her during the altercation.

The parties negotiated a plea offer, which defense counsel expected defendant to accept, but defendant rejected it on the record. Trial counsel immediately asked for an adjournment to permit him to meet with defendant in person to discuss her decision. Two weeks later, at a final conference, the parties discussed terms of the plea, which was still being negotiated. When defendant expressed her confusion, the court explained: "He's trying to get you a better deal." After defendant claimed she had not heard terms of any agreement before this date, counsel reminded defendant he reviewed the details with her just three days earlier. Defendant then complained counsel was unresponsive to her questions and calls. In response, the court expressed its confidence in trial counsel's ability to explain the proceedings to defendant before telling her: "[Trial counsel] will give you advice and I recommend that you listen to him." The conference ended with the court assuring defendant she was entitled to a trial if she wanted. Defendant ultimately rejected the plea offer against the advice of her trial counsel.

At trial, Carter testified and the video footage was admitted. Defense counsel cross-examined Carter about her relationship with defendant, and elicited testimony that defendant never pointed the gun at Carter or specifically threatened to shoot Carter. Defendant opted to testify and asked the trial court to discharge her counsel. Defendant explained she had been asking for the video, and "[hadn't] received anything until literally just now."

The court denied the request and noted that defendant had an "extensive opportunity for an extensive consultation about the video this very morning." Trial counsel summarized his efforts in the case, which included discussing the consequences of conviction with defendant several times, preparing a letter to the Gun Board, negotiating a favorable plea bargain with the prosecutor, and advising the defendant to accept the plea offer on several occasions, explicitly stating that rejecting it would be "an unintelligent decision, period." Still, defendant insisted on going to trial.

Defendant was convicted and sentenced as noted. While this appeal was pending, defendant moved for a new trial, claiming her trial counsel was ineffective for denying her access

to the full video of the incident with the audio, and asserting she would have accepted the plea offer if she had heard the video's audio before trial.

The trial court denied a new trial and a *Ginther*[1] hearing. By the time of the trial court's denial, trial counsel had passed away. The trial court ruled the video's audio was relevant but not material because the elements of felonious assault could be established by the visual footage alone. Further, Carter testified about what was said in the video, at the preliminary examination and at trial, and defendant was aware of that testimony. Overall, the trial court found no error justifying reversal or a miscarriage of justice, and expressed the belief that defendant had "some buyer's remorse" after rejecting "what was clearly an advantageous offer."

## II. DISCUSSION

### A. STANDARD OF REVIEW

Ineffective assistance of counsel claims present mixed questions of fact and constitutional law. *People v Grant*, 470 Mich 477, 484; 684 NW2d 686 (2004). "A judge must first find the facts, then must decide whether those facts establish a violation of defendant's constitutional right to the effective assistance of counsel." *Id*. This Court's factual review is for mistakes that are apparent on the record where no *Ginther* hearing is held. *People v Miller*, 326 Mich App 719, 726; 929 NW2d 821 (2019). "Questions of constitutional law are reviewed de novo." *Grant*, 470 Mich at 485.

### B. ANALYSIS

Defendant has not established trial counsel's performance was ineffective. The Sixth Amendment right to counsel extends to the plea-bargaining stage of criminal proceedings. US Const, Am VI; *Lafler v Cooper*, 566 US 156, 162; 132 S Ct 1376; 182 L Ed 2d 398 (2012). Ineffective assistance of counsel claims regarding plea bargaining are assessed under the two-part *Strickland v Washington*, 466 US 668, 687; 104 S Ct 2052; 80 L Ed 2d 674 (1984) test, which asks (1) whether counsel's performance "fell below an objective standard of reasonableness," and (2) if so, whether counsel's deficient performance prejudiced defendant, i.e., whether there is a reasonable probability that the outcome of the proceeding would have been different but for the error. *People v Douglas*, 496 Mich 557, 592; 852 NW2d 587 (2014), quoting *Lafler*, 566 US at 163. The defendant bears "the burden of establishing the factual predicate of his ineffective assistance claim." *Douglas*, 496 Mich at 592.

This Court must determine whether trial counsel's performance was objectively deficient. *Id.* In assessing counsel's performance, courts must presume "counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 US at 689. Scrutiny of counsel's decisions should avoid "the distorting effects of hindsight" and aim to "evaluate the conduct from counsel's perspective at the time." *Id*. In the plea context, "[d]efense counsel's obligation [is] to properly advise defendant regarding 'the nature of the charges or the consequences of the guilty plea' and the 'possible defenses to the charges to which the defendant

---

[1] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

is pleading guilty,' so defendant has 'the ability to make an intelligent and informed choice from among his alternative courses of action.' " *People v White*, 331 Mich App 144, 148; 951 NW2d 106 (2020), quoting *People v Corteway*, 212 Mich App 442, 445; 538 NW2d 60 (1995).

Here, defendant contends trial counsel failed to inform her of all the evidence against her, namely the audio portion of the Ring video, which prevented her from making an informed decision regarding the plea offer. In *People v Pennington*, 323 Mich App 452; 917 NW2d 720 (2018), a surveillance video captured the defendant shooting his victim. Defense counsel admitted he never showed the defendant the footage, but summarized the content for the defendant, who had never asked to view it. *Id*. at 462. Defense counsel defended this decision by saying: " 'He was there when it happened.' " *Id*. The defendant offered contradictory testimony, claiming he did ask to see the video, and if that request had been honored he would have pressed defense counsel to pursue plea negotiations. *Id*. at 463. This Court concluded the defendant had not established counsel was ineffective because, once disclosed, the information the defendant supposedly lacked did not change his position. *Id*. at 463-464. In other words, even after the defendant saw the video, he maintained he acted in self-defense, which supported counsel's testimony stating the defendant would not have accepted the plea. Thus, failure to show a defendant video footage of an incident in which defendant was involved does not necessarily equate with ineffectiveness of counsel.

As in *Pennington*, trial counsel's alleged failure to show defendant the footage of the incident with the audio does not necessarily indicate ineffective assistance. The record establishes defendant viewed the video at the preliminary examination without the audio. Although it is difficult to hear what defendant was saying in the video, Carter testified about what defendant said at the preliminary examination and at trial. Defendant does not deny she was present and in the video, demonstrating her firsthand knowledge of the encounter. Finally, as the trial court found, the audio was relevant but not material because the elements for felonious assault and felony-firearm could be established solely by the visual footage. Defendant's claim she did not have access to all the evidence because trial counsel allegedly never revealed the video with the audio ignores several instances where defendant was presented with that information, but still maintained her refusal of the plea offer. Defendant's assertion she was unaware of the audio content of the video is disingenuous given (1) her presence and involvement in the incident and (2) her ability to watch the video and listen to the victim's testimony during the preliminary examination, and (3) numerous conversations and conferences with her trial counsel. The trial court even commented about defendant having "an extensive opportunity for extensive consultation about the video" on the morning of trial, further undermining defendant's assertions that evidence was withheld and prejudiced her. Although a *Ginther* hearing was not held, trial counsel summarized his efforts on the record after defendant sought to discharge him at trial, demonstrating his objectively reasonable performance. Trial counsel drafted a letter to the Gun Board; negotiated with the prosecutor for a reduced charge; explained the terms of the plea and consequences of nonacceptance; and advised defendant to accept the bargain several times, explicitly telling defendant her refusal of the plea was "an unintelligent decision." Defendant, possessing full knowledge of the evidentiary record and potential consequences, elected to proceed to trial notwithstanding counsel's contrary recommendation. This decision reflects not a deficiency in counsel's representation, but rather appellant's informed—albeit subsequently regretted—rejection of the negotiated plea agreement. The record contains no evidence suggesting that trial

counsel's performance fell below the objective standard of reasonableness required under *Strickland,* 466 US at 687.

As the trial court correctly observed, defendant has demonstrated nothing more than post-conviction regret for rejecting the plea offer. Having failed to satisfy the first prong of *Strickland*—deficient performance—we need not reach the prejudice inquiry under the second prong.

Affirmed.

/s/ Stephen L. Borrello
/s/ Philip P. Mariani
/s/ Christopher M. Trebilcock