*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

JERRY CHRISTOPHER-RANDOL LYONS,

        Defendant-Appellant.

UNPUBLISHED
December 18, 2025
2:29 PM

No. 369383
Wayne Circuit Court
LC No. 20-004736-01-FH

Before: RIORDAN, P.J., and GARRETT and MARIANI, JJ.

PER CURIAM.

Defendant appeals as of right his bench-trial conviction of second-degree criminal sexual conduct (CSC-II), MCL 750.520c(1)(a); MCL 750.520c(2)(b) (offender 17 years of age or older, victim under 13 years of age). The trial court sentenced defendant, as a fourth-offense habitual offender, MCL 769.12, to 5 to 15 years' imprisonment. On appeal, defendant argues that the evidence was insufficient to sustain his conviction of CSC-II and that the trial court erred by scoring offense variables (OVs) 4 and 10. We conclude that the evidence was sufficient to sustain his conviction, that the trial court did not err by scoring OV 4, and that any possible error with respect to OV 10 was harmless. Therefore, we affirm his conviction and sentence but remand to the trial court to correct a clerical error in his judgment of sentence.

## I. FACTS

This case involves defendant's sexual contact with DF, which occurred when DF was 12 years old. At the time, DF lived with his mother and stepfather. Defendant, who was the stepfather's brother, did not live with them. In about December 2018, defendant was visiting the house in which DF resided. On the night in question, after defendant told DF that he did not want to sleep alone in the living room, DF lay down on a couch in the living room and fell asleep. Defendant was resting on a separate couch. DF testified that he awoke some time later to his penis "feel[ing] uncomfortable" and defendant next to him:

> And, um, when I wake up, I wake up to Jerry on his knees next to the couch that I'm laying on. And when I wake up, I feel his hand come out of my pants out of where my underwear are, specifically my belt buckle. And, um, when his hand had

-1-

came out from my pants, my penis was positioned differently. It was coming up out of my pants instead of sitting downwards like it's supposed to.

According to DF, defendant repeatedly said, "I'm sorry," about 10 to 20 times immediately after the incident. Eventually, DF told his mother about the sexual contact, and they informed the police.

Defendant was charged with CSC-II and waived his right to a jury trial. At trial, DF testified as described above. Defendant testified on his own behalf, explaining that he simply tried to wake DF up in the middle of the night by shaking him, and that DF was "startled." Defendant added that he apologized to DF "for waking him up." Ultimately, the trial court found that DF was a credible witness, and his testimony was sufficient to show that "the Defendant intentionally touched [DF's] genital area, groin and/or inner thigh or the clothing covering this area" for a sexual purpose. The trial court thus convicted defendant of CSC-II.

Defendant's sentencing guidelines range was 19 to 76 months' imprisonment, which incorporated a score of 10 points for OV 4 (serious psychological injury) and zero points for OV 10 (exploitation of a vulnerable victim). At sentencing, the prosecution asserted that OV 10 should be scored at 10 points as well, and the trial court and defense counsel agreed. However, the additional 10 points did not affect the guidelines range. The trial court sentenced defendant as stated above, and he now appeals.

## II. SUFFICIENCY OF THE EVIDENCE

Defendant first argues that the evidence was insufficient to prove that he was guilty of CSC-II beyond a reasonable doubt. We disagree.

## A. STANDARD OF REVIEW

This Court reviews a defendant's challenge to the sufficiency of the evidence de novo. *People v Hawkins*, 245 Mich App 439, 457; 628 NW2d 105 (2001). This Court "reviews the evidence in the light most favorable to the prosecution, and considers whether there was sufficient evidence to justify a rational trier of fact in finding guilt beyond a reasonable doubt." *People v Harris*, 495 Mich 120, 126; 845 NW2d 477 (2014). This deferential standard requires the reviewing court to make all reasonable inferences and credibility determinations in favor of the guilty verdict. *People v Oros*, 502 Mich 229, 239; 917 NW2d 559 (2018). "The prosecution need not negate every reasonable theory of innocence; it need only prove the elements of the crime in the face of whatever contradictory evidence is provided by the defendant." *People v Kenny*, 332 Mich App 394, 403; 956 NW2d 562 (2020).

"A trial court's factual findings in a bench trial are reviewed for clear error; its conclusions of law are reviewed de novo." *People v Pennington*, 323 Mich App 452, 464 n 7; 917 NW2d 720 (2018). "Clear error occurs if the reviewing court is left with a definite and firm conviction that the trial court made a mistake." *People v Johnson*, 502 Mich 541, 565; 918 NW2d 676 (2018) (quotation marks and citation omitted).

## B. DISCUSSION

"The elements of CSC-II are: (1) the defendant engaged in sexual contact, (2) with a person under 13 years of age." *People v Duenaz*, 306 Mich App 85, 106; 854 NW2d 531 (2014), citing MCL 750.520c(1)(a). "Sexual contact" is defined as:

> [T]he intentional touching of the victim's or actor's intimate parts or the intentional touching of the clothing covering the immediate area of the victim's or actor's intimate parts, if that intentional touching can reasonably be construed as being for the purpose of sexual arousal or gratification, done for a sexual purpose, or in a sexual manner . . . . [MCL 750.520a(q).]

The statute further defines "[i]ntimate parts" as "the primary genital area, groin, [or] inner thigh . . . of a human being." MCL 750.520a(f).

On appeal, defendant does not dispute that DF was 12 years old when the alleged offense occurred, satisfying the second element of CSC-II. Instead, defendant argues that there was insufficient evidence to satisfy the first element of CSC-II. According to defendant, the evidence merely demonstrated that he touched DF's stomach, not any intimate part as defined by statute.

DF's testimony regarding the sexual contact at his mother's house was sufficient to sustain the CSC-II conviction. DF stated, when he woke up, that he felt defendant's hand "come out of my pants out of where my underwear are, specifically my belt buckle." DF further testified that when he awoke, "[t]he tip of my penis was coming out of my pants," which was "unusual," and that "it was uncomfortable and not how it was supposed to be." The most straightforward implication of DF's testimony is that defendant placed his hand inside DF's underwear when DF was asleep, touching DF's genital area for his own sexual arousal or gratification. See MCL 750.520a(q). At a minimum, even if defendant is correct on appeal that this testimony does not directly show that he touched DF's penis, this testimony shows that defendant at least touched "the clothing covering the immediate area of [DF's] intimate parts." *Id*. Therefore, DF's testimony, by itself, was sufficient to establish that defendant was guilty of CSC-II beyond a reasonable doubt because he engaged in sexual contact with DF. See MCL 750.520h. Moreover, as this case involved a bench trial, the trial court specifically found after trial that DF was a credible witness and that he testified honestly and truthfully. The trial court added that DF's testimony was corroborated by the testimony from his mother to the effect that DF started "acting differently" after the sexual contact because he "didn't play basketball" and "didn't skateboard like he used to and he started doing worse in school." The trial court's findings in this regard are supported by the record and not clearly erroneous. See *Pennington*, 323 Mich App at 464 n 7.

Therefore, viewing the evidence in the light most favorable to the prosecution, *Harris*, 495 Mich at 126, there was sufficient evidence of sexual contact for the trial court to find defendant guilty of CSC-II beyond a reasonable doubt.

## III. OV SCORING

Defendant next argues that the trial court erroneously assigned 10 points to OV 4 because there was no evidence of serious psychological injury. Defendant also argues that the trial court erroneously assigned 10 points to OV 10 because there was no evidence that he exploited DF as a vulnerable victim. Moreover, in addition to directly asserting error, defendant also asserts that

defense counsel was ineffective for failing to object to these OV scores. We disagree with respect to OV 4, and any arguable error with respect to OV 10 was harmless because it did not affect the guidelines range.[1]

"Whether a person has been denied effective assistance of counsel is a mixed question of fact and constitutional law." *People v Abcumby-Blair*, 335 Mich App 210, 227; 966 NW2d 437 (2020) (quotation marks and citation omitted). "Findings of fact are reviewed for clear error, while constitutional determinations are reviewed de novo. A finding is clearly erroneous if this Court is left with a definite and firm conviction that the trial court made a mistake." *Id*. at 227-228 (quotation marks and citations omitted). However, because the trial court did not conduct a *Ginther*[2] hearing, our review is for errors apparent on the record. See *id*. at 227.

"Both the Michigan and the United States Constitutions require that a criminal defendant enjoy the assistance of counsel for his or her defense. Const 1963, art 1, § 20; US Const, Am VI." *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012). To obtain relief, "a defendant must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *Id*.

OV 4 "is psychological injury to a victim." MCL 777.34(1). The trial court properly scores 10 points for OV 4 when "[s]erious psychological injury requiring professional treatment occurred to a victim." MCL 777.34(1)(a). Further, MCL 777.34(2) provides, "Score 10 points if the serious psychological injury may require professional treatment. In making this determination, the fact that treatment has not been sought is not conclusive." "The trial court may assess 10 points for OV 4 if the victim suffers, among other possible psychological effects, personality changes, anger, fright, or feelings of being hurt, unsafe, or violated." *People v Armstrong*, 305 Mich App 230, 247; 851 NW2d 856 (2014). When scoring offense variables, the court may consider "all record evidence . . . including, but not limited to, the contents of a presentence investigation report, admissions made by a defendant during a plea proceeding, or testimony taken at a preliminary examination or trial." *People v Johnson*, 298 Mich App 128, 131; 826 NW2d 170 (2012).

In this case, DF's mother testified at trial that after the sexual contact, DF "withdrew from everybody," "didn't want people at the house," "didn't leave his room," "stopped playing basketball," and "stopped skateboarding." Moreover, according to the PSIR, DF's mother reported that DF "did go through trauma therapy and wasn't himself for a long time before she knew of the incident." This evidence shows that DF not only suffered serious psychological injury that may have warranted professional treatment, he did, in fact, receive some treatment. Specifically, DF's

---

[1] Defense counsel expressly agreed at sentencing that the guidelines range of 19 to 76 months in prison, as scored in the PSIR, was correct. In addition, defense counsel expressly stated that he had no objection to scoring OV 10 at 10 points. Thus, this issue arguably is waived. See *People v Hershey*, 303 Mich App 330, 351; 844 NW2d 127 (2013). However, because defendant alternatively argues on appeal that defense counsel was ineffective for failure to object, we address the merits of the issue.

[2] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

behavioral changes after the sexual contact indicate lasting psychological effects from the sexual contact, and the trauma therapy certainly was intended to address those effects. And, there is nothing to suggest that either DF's behavioral changes or the resulting trauma therapy was inappropriate or unwarranted under the circumstances. Therefore, the trial court did not err by scoring OV 4 at 10 points, and defense counsel was not ineffective for failure to object because any objection would have been meritless. See *People v Isrow*, 339 Mich App 522, 532; 984 NW2d 528 (2021).

With regard to OV 10, that offense variable concerns "exploitation of a vulnerable victim." MCL 777.40(1). Ten points is appropriate for OV 10 when "[t]he offender exploited a victim's physical disability, mental disability, youth or agedness, or a domestic relationship, or the offender abused his or her authority status." MCL 777.40(1)(b). In this case, at sentencing, the prosecution noted that the SIR reflected a score of zero points for OV 10, while the prosecution "believe[s] that should be scored at 10 for exploitation of a vulnerable victim." The trial court asked, "He was 12, so any objection?" Defense counsel replied, "none, judge."

To the extent that the trial court determined that a 10-point score was warranted exclusively because of DF's age, the trial court erred by doing so because "[t]he mere existence of one of these factors [listed in MCL 777.40(1)(b)] does not automatically render the victim vulnerable." *People v Cannon*, 481 Mich 152, 159; 749 NW2d 257 (2008). Thus, the mere fact that DF was 12 years old at the time of the sexual contact does not necessarily render him a vulnerable victim for the purposes of OV 10. On the other hand, the record does suggest that defendant used his adult status as DF's stepfather's brother to direct DF to sleep in the living room with him, where defendant was able to conveniently sexually assault DF while DF was sleeping. Had defense counsel not promptly agreed at sentencing that a 10-point score for OV 10 was warranted, the parties and the trial court could have discussed these details and established a foundation for a 10-point score.

In any event, it is not necessary to determine whether defense counsel was ineffective for failure to object to the 10-point score because, even if counsel was ineffective in that regard, the guidelines score remains unchanged with a zero-point score for OV 10. That is, even if defense counsel had successfully argued that OV 10 should be scored at zero points, defendant still would be subject to the D-II sentencing cell of 19 to 76 months in prison. Therefore, defendant is not entitled to relief for any arguable error that occurred with respect to OV 10 because his guidelines remain unaffected regardless of the OV 10 score. See *People v Francisco*, 474 Mich 82, 88-89; 711 NW2d 44 (2006).

Finally, while not discussed by defendant on appeal, we note that the judgment of sentence does not reflect the fact that he was sentenced as a fourth-offense habitual offender. Therefore, we remand this case to the trial court for the ministerial task of correcting his judgment of sentence in that regard.[3]

---

[3] See *People v Petite*, unpublished per curiam opinion of the Court of Appeals, issued October 22, 2024 (Docket No. 366739), at 5 ("It is undisputed that defendant was sentenced as a fourth-offense habitual offender in this case, but the judgment of sentence does not refer to defendant's status as

## IV. CONCLUSION

The evidence was sufficient for the trial court to find defendant guilty of CSC-II beyond a reasonable doubt. Further, the trial court did not err by scoring OV 4, so any possible error with respect to OV 10 was harmless. Therefore, we affirm defendant's conviction and sentence, but remand to the trial court for the ministerial task of correcting his judgment of sentence. We do not retain jurisdiction.

/s/ Michael J. Riordan
/s/ Kristina Robinson Garrett
/s/ Philip P. Mariani

---

such. We must therefore remand this case to the trial court for the ministerial correction of the judgment of sentence to reflect that defendant was sentenced as a fourth-offense habitual offender.").