*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
April 28, 2026
1:33 PM

Plaintiff-Appellee,

v

No. 374334
Wayne Circuit Court
LC No. 24-002551-01-FH

RYAN MICHAEL BRIGHT,

Defendant-Appellant.

Before: RIORDAN, P.J., and REDFORD and PATEL, JJ.

PER CURIAM.

Defendant appeals as of right his jury-trial conviction of fourth-degree fleeing and eluding, MCL 257.602a(2).[1]  The trial court sentenced defendant to 3 years of probation, with the first 9 months to be served in jail.  We affirm.

## I.  BACKGROUND

This case arises out of events that took place during defendant's arrest on charges unrelated to this appeal.  Deputy Chief Patrick Culter of the Lincoln Park Police Department received information that defendant, who had a warrant out for his arrest, had been seen driving nearby.  Deputy Chief Culter relayed this information over the radio to other officers and, suspecting that defendant would return home, drove to defendant's house.  In the meantime, marked police cars searched the area for defendant.

Sergeant Shawn Noe of the Lincoln Park Police Department spotted defendant's vehicle.  He pulled behind defendant's vehicle and activated the patrol car's overhead lights as defendant was preparing to turn onto the street where defendant lived.  As defendant began his turn, Sergeant Noe activated the patrol car's siren and followed.  But defendant did not pull over.  He continued driving just below the speed limit for roughly three-quarters of a city block until he reached his

---

[1] The jury acquitted defendant of two counts of obstructing or resisting a police officer, MCL 750.81d(1).

house, where he pulled into the driveway. Defendant got out of his car and immediately ran toward the side door of his house. Sergeant Noe got out of his patrol car, yelled for defendant to stop, and gave chase. Sergeant Noe caught up with defendant just as defendant got to the side door. Sergeant Noe wrapped both arms around defendant to prevent him from going inside and told defendant to put his hands behind his back. Defendant did not comply. Sergeant Noe wrestled defendant away from the door and off the porch, causing both men to fall into a nearby fence. Moments later, Deputy Chief Culter arrived to help, and defendant was placed in handcuffs.

Before trial, defendant's first appointed attorney moved to withdraw, citing a breakdown of the attorney-client relationship. Defendant filed a parallel motion to have an attorney of his choice appointed. The trial court acknowledged the apparent communication issues between defendant and his appointed counsel but denied the motion to withdraw because defense counsel was well-qualified and expressed a willingness to continue representing defendant. The trial court also denied defendant's motion because it did not have the authority to specify that a particular attorney be appointed. At the pretrial conference the following month, defense counsel again requested that she be permitted to withdraw because defendant refused to communicate with her. The trial court denied the motion and instructed defendant to communicate with his appointed counsel. Approximately two months later, defense counsel renewed her motion to withdraw as counsel, and defendant requested to represent himself. The trial court confirmed that defendant knew the risks involved with self-representation, had reviewed or would receive from defense counsel all the discovery in the case, and was familiar with the details of his plea offer. Defendant insisted, "I'm good. I'm ready for trial. I've been ready for trial." The trial court granted defense counsel's motion to withdraw and defendant's request to represent himself, and appointed defense counsel as standby counsel.

At the outset of the trial, defendant informed the trial court that he was not ready for trial and insisted that his former defense attorney, who was present as standby counsel, represent him. After a brief recess, standby counsel moved to withdraw from the matter. The trial court, having secured alternative appointed representation for defendant, granted the motion and set a new date for trial. Defendant was convicted and sentenced as stated. Defendant now appeals.

## II. SUFFICIENCY OF THE EVIDENCE

Defendant argues that the evidence was insufficient to support a conviction of fleeing and eluding. We disagree.

"Challenges to the sufficiency of the evidence are reviewed de novo." *People v Xun Wang*, 505 Mich 239, 251; 952 NW2d 334 (2020). "In reviewing the sufficiency of the evidence, this Court must view the evidence—whether direct or circumstantial—in a light most favorable to the prosecutor and determine whether a rational trier of fact could find that the essential elements of the crime were proven beyond a reasonable doubt." *People v Kenny*, 332 Mich App 394, 402-403; 956 NW2d 562 (2020). "[A] reviewing court is *required* to draw all reasonable inferences and make credibility choices in support of the jury verdict." *People v Oros*, 502 Mich 229, 240; 917 NW2d 559 (2018) (cleaned up). "It is for the trier of fact, *not the appellate court*, to determine what inferences may be fairly drawn from the evidence and to determine the weight to be accorded those inferences." *Id.* (cleaned up). Any and all conflicts that arise in the evidence must be

resolved "in favor of the prosecution." *People v Mikulen*, 324 Mich App 14, 20; 919 NW2d 454 (2018).

Defendant was convicted of fourth-degree fleeing and eluding under MCL 257.602a(2), which states:

> A driver of a motor vehicle who is given by hand, voice, emergency light, or siren a visual or audible signal by a police or conservation officer, acting in the lawful performance of his or her duty, directing the driver to bring his or her motor vehicle to a stop shall not willfully fail to obey that direction by increasing the speed of the motor vehicle, extinguishing the lights of the motor vehicle, or otherwise attempting to flee or elude the officer. This subsection does not apply unless the police or conservation officer giving the signal is in uniform and the officer's vehicle is identified as an official police or department of natural resources vehicle.

To support a conviction of fourth-degree fleeing and eluding, the prosecution must establish beyond a reasonable doubt the following elements:

> (1) the law enforcement officer must have been in uniform and performing his lawful duties and his vehicle must have been adequately identified as a law enforcement vehicle, (2) the defendant must have been driving a motor vehicle, (3) the officer, with his hand, voice, siren, or emergency lights must have ordered the defendant to stop, (4) the defendant must have been aware that he had been ordered to stop, [and] (5) the defendant must have refused to obey the order by trying to flee from the officer or avoid being caught, which conduct could be evidenced by speeding up his vehicle or turning off the vehicle's lights among other things . . . . [*People v Grayer*, 235 Mich App 737, 741; 599 NW2d 527 (1999).[2]]

Defendant contends that the evidence was insufficient to sustain his conviction of fleeing and eluding because there was no evidence that he increased his speed or extinguished his lights. Additionally, the defendant claims that his conduct after exiting his vehicle cannot be considered because he was charged under the Motor Vehicle Code. The statute does not require the prosecution to establish that a defendant sped up his vehicle or extinguished his lights. Speed and turning off the vehicle's lights are simply mentioned as factors to demonstrate that a defendant was "otherwise attempting to flee or elude the officer." The statute requires the prosecution to demonstrate that the defendant "refused to obey by trying to flee or avoid capture, which element

---

[2] The *Grayer* Court analyzed third-degree fleeing and eluding as that offense is described in MCL 750.479a, which requires proof of a sixth element—"some portion of the violation must have taken place in an area where the speed limit was thirty-five miles an hour or less, or the defendant's conduct must have resulted in an accident or collision, or the defendant must have been previously convicted of certain prior violations of the law as listed in MCL § 750.479a(3)(c)[.]" Because MCL 257.602a(1) and MCL 750.479a(1) employ substantially identical language when describing the prohibited conduct, we have adopted the *Grayer* Court's identification of the relevant elements.

necessitates a finding of some intent on the part of the defendant to flee or avoid capture." *Id*. at 741-742. And although a defendant's conduct after exiting his vehicle cannot itself form the basis for a fleeing and eluding conviction, such conduct may nonetheless constitute circumstantial evidence of a defendant's intent to flee and elude police while he was operating his vehicle. *People v Grayer(After Remand)*, 252 Mich App 349, 356, 358; 651 NW2d 818 (2002).

The evidence revealed that Sergeant Noe activated his lights and sirens in his marked squad car, and defendant continued to drive for approximately three-quarters of a city block before eventually coming to a stop in his driveway. Defendant exited his vehicle, leaving the keys in the ignition and the door open, and ran toward the side door of his home. Sergeant Noe pursued defendant on foot and ordered defendant to stop. Defendant ignored Sergeant Noe's verbal commands and attempted to get inside his home. When officers caught up with defendant, he physically resisted their attempts to handcuff him. A jury could consider defendant's actions after exiting his vehicle to be additional circumstantial evidence that he was trying to flee from and elude the police. Defendant admits as much in his Standard 4 brief by stating, "I attempted to flee from the Lincoln Park Police while driving." Defendant attempts to soften or qualify this admission by suggesting that he drove the speed limit while attempting to flee from the police out of concern for the public's safety and his own, but his speed is not dispositive. Viewing the evidence in the light most favorable to the prosecution, the evidence was sufficient evidence to enable the jury to find beyond a reasonable doubt that defendant was guilty of fourth-degree fleeing and eluding.

## III. RIGHT TO COUNSEL

Defendant argues that he was deprived of his right to counsel because the trial court denied his initial request for replacement counsel and his first appointed attorney's motion to withdraw despite a breakdown in the attorney-client relationship. As a result, defendant claims his newly appointed attorney did not have adequate time to prepare for trial. We disagree.

"We review for an abuse of discretion a trial court's exercise of discretion affecting a defendant's right to counsel of choice." *People v Akins*, 259 Mich App 545, 556-557; 675 NW2d 863 (2003) (cleaned up). "An abuse of discretion occurs when a trial court's decision 'falls outside the range of reasonable and principled outcomes.' " *People v Franklin*, 500 Mich 92, 100; 894 NW2d 561 (2017), quoting *People v Duncan*, 494 Mich 713, 723; 835 NW2d 399 (2013). To the extent that defendant is attempting to show that trial counsel was ineffective because he was not adequately prepared for trial, that claim presents a "mixed question of fact and constitutional law." *People v Yeager*, 511 Mich 478, 487; 999 NW2d 490 (2023). We review de novo constitutional questions, while we review the trial court's findings of fact, if any, for clear error. *Id*. When, as in this case, defendant has not moved for a new trial or a *Ginther*[3] evidentiary hearing in the trial court, *Heft*, 299 Mich App at 80, or moved in this Court to remand for a *Ginther* hearing, *People v Abcumby-Blair*, 335 Mich App 210, 227; 966 NW2d 437 (2020), our review is limited to errors apparent on the record, *Abcumby-Blair*, 335 Mich App at 227.

---

[3] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

Both the United States Constitution and Michigan's 1963 Constitution guarantee a criminal defendant the right to the assistance of counsel. Const 1963, art 1, § 20; US Const, Am VI. However, a defendant is not entitled to new counsel merely because the defendant is generally unhappy with counsel or generally lacks confidence in counsel. *People v Strickland*, 293 Mich App 393, 398; 810 NW2d 660 (2011). "Substitution of counsel is warranted only upon a showing of good cause and where substitution will not unreasonably disrupt the judicial process." *People v McFall*, 309 Mich App 377, 382-383; 873 NW2d 112 (2015)*Id*. at 382-383 (cleaned up). Good cause may exist when there is "a destruction of communication and a breakdown in the attorney-client relationship." *Id*. at 383 (cleaned up). But "[a] defendant may not purposely break down the attorney-client relationship by refusing to cooperate with his assigned attorney and then argue that there is good cause for a substitution of counsel." *People v Meyers*, 124 Mich App 148, 166-167; 335 NW2d 189 (1983). And reversal is not warranted when "the record does not show that the lawyer assigned to represent [defendant] was in fact inattentive to [her] responsibilities." *People v Ginther*, 390 Mich 436, 442; 212 NW2d 922 (1973).

Defendant's first attorney unsuccessfully moved the trial court to withdraw as counsel twice. The first motion cited a breakdown of the attorney-client relationship. When defendant was asked by the court to explain, defendant stated only that "[t]he trust has broke down. That's just where I'm at. I can't do anything at this point." The attorney, for her part, expressed a willingness to make herself available to defendant to discuss his case. The trial court acknowledged "some communication issues" between defendant and his attorney but denied the motion because the attorney was attentive to her responsibilities and willing to continue representing defendant. Defendant's bare assertion that "[t]he trust has broke down" was insufficient to show that the attorney-client relationship had broken down. Defendant did not assert that his attorney was inadequate, lacking in diligence, or disinterested in his case. See *Ginther*, 390 Mich at 441-442. Further, defendant failed to demonstrate that substitution would not unreasonably disrupt the judicial process. See *McFall*, 309 Mich App at 382-383. The trial court did not abuse its discretion by denying defense counsel's first motion to withdraw.

One month later, defendant's first attorney again moved to withdraw as counsel. Defense counsel indicated that she had attempted to communicate with defendant, but defendant refused to communicate with her after her initial motion to withdraw was denied. Defense counsel expressed that she was ready and willing to cooperate with his defendant and was prepared to take the case to trial. A defendant cannot obstruct the attorney-client relationship by refusing to cooperate with his attorney. See *Meyers*, 124 Mich App at 166-167. The trial court's denial of defense counsel's second motion to withdraw as counsel did not fall outside the range of reasonable and principled outcomes.

Two months later, defendant requested to represent himself and his first attorney moved to withdraw as counsel. The trial court granted both requests and appointed defendant's first attorney as standby counsel. But, on the first day of trial, defendant stated that he no longer wished to represent himself. The trial court secured alternative appointed representation for defendant and rescheduled trial for three weeks later. Defendant asserts that his replacement counsel was not afforded sufficient time to prepare for trial. We find no merit in this argument.

The United States and Michigan Constitutions afford criminal defendants the right to effective assistance of counsel. *Yeager*, 511 Mich at 488, citing Const 1963, art 1, § 20; US Const

Am VI; *Strickland v Washington*, 466 US 668; 104 S Ct 2052; 80 L Ed 2d 674 (1984). To prevail on a claim of ineffective assistance, "a defendant must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that [the] outcome would have been different." *Yeager*, 511 Mich at 488 (cleaned up). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* (cleaned up). "Effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *People v Head*, 323 Mich App 526, 539; 917 NW2d 752 (2018) (cleaned up).

In *United States v Cronic*, 466 US 648, 658; 104 S Ct 2039; 80 L Ed 2d 657 (1984), the United States Supreme Court delineated "three rare situations in which the attorney's performance is so deficient that prejudice is presumed." *People v Frazier*, 478 Mich 231, 242; 733 NW2d 713 (2007). Those circumstances include denial of counsel at a critical stage of the proceedings, counsel's complete failure to meaningfully challenge the prosecution's case, and where counsel is called upon to render assistance under circumstances where even competent counsel likely could not. *Cronic*, 466 US at 659-660. In this case, defendant broadly contends that because his trial counsel was allocated limited time to prepare for trial, trial counsel was unable to properly challenge the warrants that the Lincoln Park police officers relied on to initiate the traffic stop. Although ineffective assistance of counsel can be when counsel's time to prepare for trial is unreasonably limited, *id.* at 658-662, only an *entire* failure to subject a case to meaningful adversarial testing is sufficient to permit a court to relieve a defendant of the burden to establish that his counsel acted unreasonably, and that the defendant was prejudiced. *Id.* at 659. See also *Frazier*, 478 Mich at 244 ("The *Cronic* test applies when the attorney's failure is complete, while the *Strickland* test applies when counsel failed at specific points of the proceeding."). The circumstances here do not warrant the presumption that defendant's second attorney rendered ineffective assistance of counsel. Accordingly, review under *Strickland* is appropriate.

The record does not support the conclusion that trial counsel's performance fell below an objective standard of reasonableness. Rather, the record demonstrates that trial counsel was an effective advocate who not only convinced the jury to find his client not guilty on two of the three charges against him, but who also vigorously contested the fleeing and eluding charge by attempting to undermine the legitimacy of the warrant that purportedly justified defendant's arrest in the first place. See *People v Payne*, 285 Mich App 181, 189; 774 NW2d 714 (2009) ("the record reveals that defense counsel was prepared for trial, displayed an adequate knowledge of the evidence, and was fully prepared to cross-examine the prosecution's witnesses. We cannot conclude that counsel's performance in this regard fell below an objective standard of reasonableness").

IV. RIGHT TO TRIAL

Defendant argues that the trial court punished him for refusing to accept the prosecution's plea offer by imposing a lengthier sentence and thus he was denied due process of law. We disagree.

Defendant failed to preserve this issue for review by raising it before the trial court. See, e.g., *People v Lockridge*, 498 Mich 358, 392; 870 NW2d 502 (2015) (treating claim of constitutional error at sentencing as unpreserved when it was not presented to the trial court in the

first instance); *People v Jarrell*, 344 Mich App 464, 481-482; 1 NW3d 359 (2022) (same). Because this issue is unpreserved, our review is for plain error affecting substantial rights. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999). To avoid forfeiture under the plain-error rule, a defendant must show that an error occurred, that it was clear or obvious, and that it was prejudicial, i.e., that it affected the outcome of the trial court proceedings. *Id*. at 763. "Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Id*. at 763-764 (cleaned up).

A trial court "cannot base its sentence even in part on a defendant's refusal to admit guilt." *People v Pennington*, 323 Mich App 452, 467; 917 NW2d 720 (2018) (cleaned up). Indeed, "[i]t is a violation of due process to punish a person for asserting a protected statutory or constitutional right." *Id*. (cleaned up). We consider three factors when determining whether a sentence was improperly influenced by a defendant's failure to admit guilt: "(1) the defendant's maintenance of innocence after conviction, (2) the judge's attempt to get the defendant to admit guilt, and (3) the appearance that had the defendant affirmatively admitted guilt, his sentence would not have been so severe." *People v Wesley*, 428 Mich 708, 713; 411 NW2d 159 (1987).

The evidentiary record does not support the conclusion that the trial court impermissibly considered defendant's assertion of his right to a trial by jury when formulating his sentence. Although the trial court at one point expressed its opinion that the prosecution's plea offer was "quite a fair and good offer in this Court's eyes as far as these go," the trial court did not suggest that defendant would receive a longer sentence if he chose to proceed with a trial. Further, the trial court did not state that it would sentence defendant at the top of the guidelines because defendant was choosing to proceed to trial. Rather, the trial court twice stated that, based on the nature of this case, it would be inclined to sentence defendant at the top of the guidelines range. None of the statements by the trial court suggest that defendant's ultimate sentence was influenced by his refusal to plead guilty. *Pennington*, 323 Mich App at 467. Moreover, the trial court ultimately sentenced defendant at the lower-end of his guidelines range.[4] Defendant has not pointed to anything in the record to support his contention that he "incurred the wrath of the trial judge," or that his sentence was influenced by his failure to plead guilty. We find no error in the trial court's sentence.

## V. DEFENDANT'S STANDARD 4 BRIEF

Defendant's short Standard 4 brief leaves us perplexed. After admitting that he attempted to flee and elude the Lincoln Park police officers, the balance of defendant's brief does not appear to advance any specific assertion of error in *these* proceedings. Rather, defendant seemingly claims that his transcripts from another case in the 25th District Court were altered, further noting he has since been assured the district court is "going to be doing the right thing." Defendant then encourages this Court to contact the district court to inquire about the allegedly modified transcripts and whether "ongoing actions related to this issue are being taken against [defendant]."

---

[4] Defendant's sentencing guidelines, as a habitual third offender, were scored at 2-25 months.

"An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority." *People v Iannucci*, 314 Mich App 542, 545; 887 NW2d 817 (2016) (cleaned up). "The failure to brief the merits of an allegation of error constitutes an abandonment of the issue." *People v McPherson*, 263 Mich App 124, 136; 687 NW2d 370 (2004). Defendant's Standard 4 brief lacks a discernable claim of error; it raises vague, unsupported allegations about a "situation" that, as far as we can tell, arose in a different case.[5] We therefore deem the argument presented in defendant's Standard 4 brief abandoned and decline to address it further.

Affirmed.

/s/ Michael J. Riordan
/s/ James Robert Redford
/s/ Sima G. Patel

---

[5] To the extent the other case referenced by defendant is the case in which the underlying arrest warrant was entered, thus leading to the fleeing and eluding charge at issue in this case, any irregularity in the earlier case does not materially affect defendant's fleeing and eluding conviction. At the time of his arrest, defendant apparently had a second outstanding warrant stemming from yet another case, and there is no record evidence suggesting the police could not have lawfully arrested defendant on the basis of the second, unchallenged warrant.